Robert Anthony **BRYAN**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 74 Civ. 1071.

United States District Court,
S. D. New York.

June 12, 1974.

Robert Anthony Bryan, pro se.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for respondent; Kenneth R. Feinberg, Asst. U. S. Atty., of counsel.

## OPINION

COOPER, District Judge.

1. The petition

We are taken to task by defendant in his petition (pursuant to Title 28, U.S.C.

§ 2255) sworn to February 21, 1974 [1] as "true and correct to the best of his knowledge and belief," for imposing a sentence designating him, after a medical study we ordered (pursuant to Title 18, U.S.C. § 4208), a Young Adult Offender and sentencing him on August 14, 1973 to an indeterminate term of imprisonment not to exceed ten years. [2] He now insists that he be allowed to withdraw his plea of guilty, entered on January 4, 1973, to "the crime of armed bank robbery . . . a crime which he did not commit" (petition, p. 4) and that he be sentenced for the only crime to which he confessed—"the crime of assult (sic) with a weapon" (petition, p. 4). [3] He contends our sentence was "invalid" and should be set aside. We refuse, and because he appears *pro se* we undertake to tell him why, pointing out at the same time that his petition is a sham and was spurred on by trick.

## 2. The indictment

Count one charges defendant on or about October 10, 1972 "unlawfully, wilfully and knowingly, by force, violence and intimidation did take from the person and presence of another" approximately $9,441.00 "in the care . . . and possession of the Nanuet National Bank . . . the deposits of which were then insured by the Federal Deposit Insurance Corporation." (Title 18, U.S.C. §§ 2113(a) and (b) and 2.)

Count two charges defendant "in committing and attempting to commit the offense set forth in Count One of this indictment, unlawfully, wilfully and knowingly did . . . put in jeopardy the lives of persons by the use of dangerous weapons and devices to wit, a firearm." (Title 18 U.S.C. §§ 2113(d) and 2.)

As we shall attempt to make clear hereinafter, defendant entered a plea of guilty to count two in open court on January 4, 1973, represented then by his attorney, Robert Brown, Esq. We note also that both Judgment and Commitment forms of March 20, 1973 and August 14, 1973 are unmistakable in their recital that defendant entered a plea of guilty to count two.

## 3. Taking the plea

The official minutes recorded at the time of plea on January 4, 1973 consist of twenty-eight (28) pages. They reveal that at the very outset, defendant's counsel clearly announced defendant's intention to plead guilty to count two. "There are two charges against Mr. Bryan . . . The defendant has discussed this with me and I discussed both counts with him . . . he . . . requests permission to plead guilty to the second count . . . That is, the Grand Jury further charges . , . ." and counsel then read word for word the exact language of count two set forth in the indictment (pp. 2, 3). [4] At another point (p. 6) Mr. Brown stated, "I discussed this with Mr. Bryan quite a number of times—"

Before we inquired of defendant whether his attorney correctly stated defendant's position as to the plea we made certain he understood what was taking place and assured him (pp. 3a, 4): ". . . we don't want anybody to plead guilty to anything . . . unless he did commit the act charged against him. We do not want anybody pleading guilty just because he thinks, well, I might as well get rid of the case, or because it might be a good idea to plead guilty, or that you might get a break . . . We want a man to

---

1. The motion papers were completed on May 3, 1974.

2. Pursuant to Title 18 U.S.C. § 4208(a)(2).

3. Not a federal offense. On November 22, 1973, petitioner moved *pro se* for reduction of sentence (Rule 35 of F.R.Cr.P.); this was denied in our memorandum in which we pointed out "the serious nature of the felony to which petitioner pled guilty, his prior criminal record and other deficiencies."

4. References are to official transcript of January 4, 1973.

plead guilty only if he is guilty and did commit the act charged against him. Do you understand that? A. Yes, sir." [5]

It then became evident that defendant was trying to tell us that when he entered the bank with his friend Anderson, he did not intend anything illegal or even improper; that after they were in the bank, defendant suddenly noticed Anderson had a gun in his hand while attempting to take property of the bank; whereupon defendant displayed his own gun while undertaking to support Anderson's efforts. As defendant stated in reference to Anderson: "I couldn't turn my back. Put it this way, I had to go along; I was forced . . . I was forced at this point to go along with him." (p. 5) Shortly thereafter, to our inquiry of Mr. Brown, "How did he [defendant] participate in it?", the attorney responded, "By the display of the gun and by going along with the other person. He made no effort to impede him. As a matter of fact, his acts helped accomplish the crime." (p. 6)

At that juncture, we were not certain that the defendant had unambiguously admitted the charge in count two. We declared a recess for the sole purpose of enabling counsel to confer further with his client. During the thirty-minute recess, we observed to counsel on both sides (in the robing room), ". . . no man should plead guilty unless the judge is convinced that the plea is voluntary and with full understanding by the defendant. . . . I don't want any accomodation (sic) by way of a plea, and I don't want any of us to be involved with anything that might reflect on any of us, but, more important, what

is not basically justice . . . it might be the better part of wisdom to let this thing be laid before a jury and let them decide his guilt or innocence, unless I am convinced that what he is about to say to me, if he does say anything, is well meant, and not just formulated for the purpose of satisfying a judge . . . it will have to be the kind of recital by the defendant that will wash out completely any thought that he was accomodating (sic) the judge by formulating the words that would be acceptable to the judge . . . It is the judge's obligation to protect him and make him see that the better part of wisdom is to make a clean breast of it, if he wants to plead guilty." (pp. 10–13)

Mr. Brown's comment during the recess has significance: "But he was conscious; he went along with the situation. The word 'forced' I think in his case was that he was forced out of a sense of loyalty, chivalry . . ., but he actively participated and knew what he was doing." (pp. 12, 13)

We concluded the conference with the observation, "If you [Mr. Brown] think something can be accomplished today I will wait; if not, he can come in and plead any time or stand trial." (p. 14) We indicated possible trial dates. (pp. 13, 14)

We then proceeded in open court. Almost immediately, Mr. Brown had this to say: "I have conferred with the defendant . . . and he would like to make an application to plead guilty to count 2 of this indictment which reads as follows . . ." Counsel then proceeded, for the second time in open court, to recite each word found in count

5. Further, "I don't want a man pleading guilty who is innocent . . . I don't want anybody to plead guilty who did not do what he is charged with . . . I will not take a plea from any human being unless I am convinced that what he did was contrary to law. If he doesn't want to admit it, I don't want to make him admit it . . . Unless he gives me the words that satisfy me that he committed this crime, and not just satisfy you [defendant's attorney]

. . . no matter what he tells you, it has got nothing at all to do with what he tells me on that record." (pp. 6–9) "Protect yourself [defendant]. And remember, the judge is not going to take a plea of guilty unless you tell me what you did, and that what you did does amount to a plea of guilty. Do you understand that? Do you?

THE DEFENDANT: Yes, sir." (p. 10)

two. (pp. 14, 15) Counsel then added, "And Mr. Bryan, I think would like to make a statement to your Honor." THE COURT: Very well . . . Now, what do you want to say to me, young man, with regard to what your lawyer has just said? I want to be sure, I repeat, that you do not plead guilty to anything you did not do . . . tell me what it is you did on that occasion. . . . THE DEFENDANT: We originally walked into the bank to obtain a money order, as I said before. I stood in one corner just looking down, and when I looked back, the robbery was taking place. Now, before, your Honor, I used a word which was misconstrued. I didn't mean forced by fear; I meant loyalty. Instead of just walking out I thereupon backed him up. Now, a certain gentleman got up and walked towards me, and all I did was take an empty gun and point it in his direction. Therefore, I was part of it. There was no intention on my part, your Honor, originally to walk in and rob a bank. THE COURT: What you are saying is that at the last minute you decided on the spur of the moment to help this other fellow? THE DEFENDANT: Yes, your Honor. COURT: Is that right? DEFENDANT: Yes. COURT: To rob the bank? DEFENDANT: Yes, your Honor. COURT: Now, are you saying this to me because it is so or because you want to get me to take your plea of guilty? DEFENDANT: No. I said it because it is so. COURT: If you were to be sworn, under oath, would you say the same thing under oath? DEFENDANT: Yes, your Honor, I would say the same thing under oath." (pp. 15-17)

We again reminded defendant: "The law does not want a human being to be fingerprinted, put in jail, possibly, unless he actually did in truth and in fact commit a wrong . . . And you, the judge, must be mighty sure that he knows what he is doing. It is not your life, Judge; it is his life. Now you understand why I have got to be careful? DEFENDANT: Yes, Sir." (pp. 17, 18)

The minutes then reveal our explanation to the defendant of the jury function, the burden of proof beyond a reasonable doubt that rests with the government and never shifts to a defendant, the absolute right of a defendant to remain silent and/or to adduce oral and written proof in his behalf, the imperative instruction to the jury that a defendant's silence must not be held against him in any way whatever, a conviction can result only by unanimous jury vote, etc. (pp. 18-21). "THE COURT: Now, do you still stand on your plea of guilty or do you want a trial? THE DEFENDANT: I stand on my plea of guilty." We satisfied ourselves that the plea was in every sense voluntary and not induced by threat. (p. 21) Accordingly, we accepted defendant's plea of guilty to count two.

Before the close of the plea-taking proceedings, we urged defendant to consider giving full and truthful cooperation to the probation officer to the end that we would have the benefit of information concerning him as a human being; that we wanted to learn more about him than the act to which he had confessed. (pp. 22-25)

We must make it perfectly clear that nowhere throughout the twenty-eight pages of minutes of the proceeding with respect to the taking of the plea is there any reference—even by inference—to any criminal charge other than count two, and, further, not a part thereof—count two in its entirety.

### 4. The defendant's scheme

Defendant learned that a deputy court clerk in completing the "Referral for Presentence Investigation" form, listed the offense "Assult (sic) with a weapon". This seemed sufficient to this defendant to embark on a scheme he hoped would relieve him of the sentence imposed, a scheme which he fulfilled by the petition now before us. A copy of this form defendant included in his petition to support his position that "petitioner did not pleaed (sic) guilty to the crime

of armed robbery . . ." and "enter[ed] a plea of guilty to the crime of *assult* (sic) *with a weapon*. That after said plea of guilty was entered to the crime of assult (sic) with a weapon, the clerk of court gave the petitioner the attached *Referal* (sic) *for Pre Sentence Investigation* attached hereto and marked exhibit "A" which clearly indicates the crime to which petitioner entered his plea of guilty too (sic)."[6] (petition, p. 4) Of course, all this will avail him absolutely nothing.

This is a portion of the woefully false reasoning in which large numbers of defendants engage—that anything a defendant does to extricate himself from being held to account for criminal deportment allegedly committed by him (and, of course, the same is true after conviction by plea or trial) is acceptable; that it is to be expected and overlooked and he held harmless. He needs to be shown firmly and plainly that such criminal maneuvering will not be tolerated and that he does so at his peril; that the law insists that its process be invoked by means and methods both open and clean; that the court is intolerant of chicanery or trickery or underhanded practices at any and all times regardless of who or which side in a case resorts thereto; that under our conception of law, the same justice due the accused is due the other litigant in the case; that irrespective of the status of the parties before the court, equal justice is due both sides. Putting it succinctly, it would be unthinkable to allow an advantage to either the government or the defendant as a reward for foul practice.

We are adamant in our position that every type of petition recognized in law and presented to court especially *pro se* should not be throttled in any way; it is entitled to the undivided attention of, and appropriate disposition by, the judge. No matter how faulty or limited it is—in expression or omission, in de-

fective presentation or riddled with error—it must be dealt with carefully and considerately, the omissions supplied whenever and wherever possible or feasible, the full meaning painstakingly deciphered, and every effort extended to give the maximum interpretation favorable to a petitioner; in a word, a judicial helping hand (not a "handout") should be extended in order to make the petition as complete as possible so that the court can determine its merits and make the appropriate disposition.

Such a judicial approach and solicitous concern, however, have absolutely no place where a petitioner with criminal intent and purpose undertakes, with full knowledge, to perpetrate criminal acts in the preparation of his petition and the placing of it before the court, or knowingly practices a fraud upon the court or pulls the wool over the eyes of justice, hopefully to invoke the court's aid in granting, in whole or in part, the relief he seeks.

We must be ever mindful, in sharp contrast, that the government may invoke the law's severe condemnation by even a trivial unfairness to a defendant and, without more, earn a dismissal of its case. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Evanchik, 413 F.2d 950 (2d Cir. 1969); United States v. Ruggiero, 472 F.2d 599 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973). This highly sensitive insistence on fair play is the standard long set by the citizenry in whose behalf, it must not be overlooked, the government, in its representative capacity, makes its court appearance—not, as so many misconceive it, in behalf of the public's officials functioning in the nation's capitol.

### 5. Conclusion

We look upon this obvious piece of sham and trickery with misgivings, a plain abuse of the judicial process, some-

---

**6.** We note that twice in his petition, defendant asserts he had pleaded to "assult (sic) with a weapon"—the exact wording and spelling which appears in the form filled in by the deputy court clerk.

thing calling for more than a formal denial of the petition. It discloses a contemptuous regard of the court's vigilance and a total lack of apprehension as to the consequences of such deportment. This complete indifference to truth—a situation we frequently encounter with similar applications seeking relief from the consequences of a plea of guilt and based on palpably false assertions presented with complete recklessness— prompt us to point out to this defendant that he engages in a very risky business indeed and that his effrontery might come to the attention of some grand jury which might properly conclude that he unlawfully, wilfully and knowingly presented to this court a petition which he falsely swore was true.

Meanwhile, for the benefit of defendant and community alike, we direct that a copy of this order and opinion be mailed forthwith to the authorities administering the Young Adult Offender program under which this defendant, we trust and hope, is presently undergoing rehabilitative treatment.

Petition denied in each and every respect.

So ordered.