**George N. ROY, Plaintiff,**

**v.**

**Marvin T. RUNYON, Postmaster General, Defendant.**

**Civil No. 96-27-P-DMC.**

United States District Court, D. Maine.

Jan. 30, 1997.

Bruce B. Hochman, Thomas V. Laprade, Black, Lambert, Coffin & Rudman, Portland, ME, for Plaintiff.

Evan Roth, Office of the U.S. Attorney, Portland, ME, for Defendant.

***MEMORANDUM DECISION ON DEFENDANT'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT*** [1]

DAVID M. COHEN, United States Magistrate Judge.

This lawsuit challenges the decision of the U.S. Postal Service not to rehire the plaintiff, after twice having fired him more than a decade ago in connection with a history of substance abuse that the plaintiff appears to have put behind him as of the second dismissal. The plaintiff asserts claims of disability discrimination under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (Count I), retaliation and sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Counts II and III), promissory estoppel (Count IV), a separate claim for punitive damages (Count V), and a claim seeking damages for infliction of emotional distress (Count VI). Pending are the defendant's motion to dismiss Counts V and VI and his motion for summary judgment on the remaining counts. For the reasons that follow, both pending motions are granted in part and denied in part.

## I. Standards for Evaluating the Motions

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party....'" *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995) (citations omitted). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and "give the party the benefit of all reasonable inferences to be drawn in its favor." *Ortega-Rosario v. Alvarado-Ortiz,* 917 F.2d 71, 73 (1st Cir.1990). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, "the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553), *cert. denied,* — U.S. —, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995); Fed.R.Civ.P. 56(e); Local R. 19(b)(2).

In contrast, a motion to dismiss for failure to state a valid claim imposes a significantly less stringent burden on the plaintiff. "When evaluating a motion to dismiss under Rule 12(b)(6), [the court] take[s] the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor." *Pihl v. Massachu-*

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

setts Dep't of Educ., 9 F.3d 184, 187 (1st Cir.1993). A defendant is entitled to dismissal for failure to state a claim "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990); *see also Jackson v. Faber,* 834 F.Supp. 471, 473 (D.Me.1993).

## II. Factual Context

For purposes of the pending summary judgment motion, a review of the record in the light most favorable to the plaintiff reveals the following:

The plaintiff was twice employed by the Postal Service prior to the events giving rise to this litigation. Deposition of George N. Roy ("Roy Dep."), Exh. 9 to Plaintiff's Statement of Material Facts ("Plaintiff's SMF") (Docket No. 19), at 5. Most recently, the plaintiff worked for the Postal Service from February 11, 1985 to May 29, 1985.[2] Request for Personnel Action, appended to Defendant's Statement of Undisputed Material Facts, etc. ("Defendant's SMF") (Docket No. 16), at Tab 4. The plaintiff mounted two challenges to his 1985 dismissal. He appealed to the Merit Systems Protection Board, which appeal was dismissed for lack of jurisdiction because the plaintiff had been employed for less than a year. Merit Systems Protection Board Decision dated Aug. 15, 1985, appended to Defendant's SMF at Tab 8. The plaintiff also filed a civil action in this court alleging unlawful discrimination based on a disability, but the court entered judgment in favor of the Postal Service because the plaintiff failed to comply with the statutory time limit for submitting a written administrative complaint. *Roy v. United States Postal Serv.,* No. 86–173–P, slip op. (D.Me. Mar. 27, 1987).[3]

The plaintiff completed a 35–day inpatient alcohol and drug rehabilitation program in 1985. Transcript of proceedings before the Equal Employment Opportunity Commission dated Mar. 20, 1995 ("EEOC Tr."), Exh. 10 to Plaintiff's SMF, at 14–15. From May 1986 to March 1987 the plaintiff worked as a painting contractor for BDC, Inc. Plaintiff's Response to Defendant's First Set of Interrogatories, appended to Defendant's SMF at Tab 15, at ¶ 5(h). Although the plaintiff worked in other capacities as a volunteer and intern, the position as a painter was his only paying job from the time of his dismissal by the Postal Service in 1985 through 1993. *Id.* at ¶ 5. The plaintiff injured his back while working at BDC in March 1987 and thereafter began receiving workers' compensation benefits. *Id.* at ¶ 5(h).

On May 27, 1993 the plaintiff wrote a letter to Susan LaChance, a Portland-based human resources officer with the Postal Service, requesting reinstatement to a position as a mail carrier. Letter of George Roy to Susan LaChance dated May 27, 1993 ("Roy Letter"), appended to Defendant's SMF at Tab 17, at 1. In the letter, the plaintiff attributed his loss of his previous positions with the Postal Service to drug and alcohol problems. *Id.* He stated that shortly after his 1985 termination he entered the treatment program referenced above. *Id.* He reported that, following that experience, his life had "changed dramatically" as evidenced by his work at BDC, his nearly completed pursuit of a university degree in social work following his workplace injury, and his volunteer work at an elementary school and at the same hospital where he underwent rehabilitation. *Id.* Donna Judge, a senior personnel/training specialist with the Postal Service in Portland, replied in writing to the plaintiff by inviting him to complete certain application forms. Letter of Donna Jude to George Roy dated June 7, 1993, appended to Defendant's SMF at Tab 23. Jude advised the plaintiff

2. The defendant contends that this second period of employment ended one day before the plaintiff's 90–day probationary period expired. The cited document from the record does not establish this fact. Further, the defendant contends that the Postal Service fired the plaintiff in 1985 due to an unsatisfactory attendance record and his insubordination. For this proposition the defendant relies on a letter to that effect, written to the plaintiff by the Portland postmaster in May 1985. As the plaintiff points out, this item from the summary judgment record is not of evidentiary quality because it would be inadmissible hearsay at trial.

3. A copy of the court's opinion appears at Tab 13 of the Defendant's SMF.

as follows: "The actual determination of [your] suitability [for reinstatement] will be the joint responsibility of both this office and the postmaster of the office to which you are applying." *Id.* It is not clear from her letter what Jude meant by "this office," but she was presumably referring to the personnel department of the Postal Service's Portland office. She wrote that "we"—again, presumably the personnel office—"will do pre-hire screening and make a determination at that time." [4] *Id.*

The plaintiff had an interview with Jude and, subsequent to that, another interview with Lewiston postmaster Roger Nadeau.[5] EEOC Tr. at 31. Nadeau then telephoned the plaintiff and stated, "congratulations, I've decided to hire you." [6] Roy Dep. at 44. He stated that the plaintiff would be sent further "paperwork" and that the personnel office would schedule a "fitness for duty" examination. *Id.* at 44–45. After the plaintiff submitted to a physical examination, several weeks passed with no news from the Postal Service—prompting him to call Nadeau, twice, to inquire about his status. EEOC Investigative Affidavit of George N. Roy, appended to Defendant's SMF at Tab 19, at 2. The first time Nadeau's response was "I don't know" and the second time he advised the plaintiff that he was still waiting for LaChance to "sign off" on the matter. *Id.*

According to Nadeau, he subsequently discussed the plaintiff's reinstatement request with LaChance, who pointed out that Nadeau may have overlooked or not fully evaluated the plaintiff's prior work history (or lack thereof). EEO Investigative Affidavit of Roger J. Nadeau ("Nadeau Aff."), appended to Defendant's SMF at Tab 25, at 2. Nadeau's account was that, at some point thereafter, he had a meeting with the plaintiff's wife, Tanya Roy, about an unrelated matter.[7] *Id.* According to Nadeau, Mrs. Roy inquired about her husband's status and he told her he had decided not to hire the plaintiff. *Id.* at 3. Nadeau's sworn statement avers:

> I discussed his lack of work history with her and was given information that he was attending school and caring for the children as an explanation. After she left, I decided again to review the records and rethink my decision. I notified Ms. Lachance [sic] and requested the records. I received more information this time, reviewed all information, changed my decision, and notified Ms. Lachance. Later I received a call asking me to meet with her and Mr. Rene Albert, my manager, to discuss my decision. We met in her office and again carefully reviewed the work history issue. I argued that he was going to school, caring for his children and doing volunteer work. After more discussion, I was convinced that this did not suffice to establish a history of past employment where as [sic] it was not structured, under supervision, or with co-workers in the same atmosphere.[8]

4. The protocol for dealing with the plaintiff's request for reinstatement, or at least what representations Jude made to the plaintiff about the protocol, is a disputed issue of material fact. The defendant's position is that Jude represented to the plaintiff at an interview that the local postmaster considering the plaintiff for reinstatement would make a decision first, followed by a determination by the personnel office. Defendant's SMF at ¶ 6, citing EEO Investigative Affidavit of Donna Jude, appended to Defendant's SMF at Tab 24, at 1.

5. The cited portion of the record does not identify Nadeau as the Lewiston postmaster, but this is obviously not a disputed factual issue.

6. This represents a disputed issue of material fact. Nadeau's contention is that he stressed the "proviso" that the hiring decision was subject to approval by the "Manager of Human Resources." EEOC Tr. at 172.

7. It appears, although the cited portion of the record does not establish, that Tanya Roy was an employee of the Postal Service during the times relevant to this lawsuit.

8. In his Statement of Material Facts, the plaintiff objects to the court's accepting Nadeau's version of these events for purpose of the pending summary judgment motion. He points out that the EEOC administrative judge who heard his complaint found Nadeau's asserted explanation to be pretextual. *See* Equal Employment Opportunity Commission Findings and Conclusions, Exh. 2 to Plaintiff's SMF, at 17–18 (characterizing issue of "lack of work history" as a "red herring"). I discuss the issue of pretext, *infra*. For purposes of the factual recitation, it suffices to note—as the defendant did in his factual statement—that the quoted statement reflects Nadeau's sworn version of what transpired. I have not, however, accepted this version as true for purposes of the summary judgment motion.

*Id.* Likewise, again according to Nadeau, he was concerned about the plaintiff's history of violent and criminal behavior—not because Nadeau feared it would recur, but because he was concerned that it would cause labor unrest in an already tense workplace if word got out among the other employees that the plaintiff had such a history.[9] *Id.*

Nadeau notified the plaintiff in a letter dated February 18, 1994 that the Postal Service had decided not to reinstate him. Letter of Roger Nadeau to George N. Roy dated Feb. 18, 1994 ("Nadeau Letter"), appended to Defendant's SMF at Tab 29. By the time he had written this letter, Nadeau had received from LaChance a file containing documents evidencing the plaintiff's challenge of his 1985 dismissal on equal opportunity grounds. Roy Dep. at 94–96.

In his letter, Nadeau cited an official policy of the Postal Service "to refuse employment to persons who were removed ... for cause" and stated that he nevertheless "carefully" considered the plaintiff's "past Postal employment history, ... work record in the private sector, ... military records, and criminal history." Nadeau Letter. The applicable Postal Service regulations actually provided that an employee fired for cause could be reinstated "in exceptional cases," but only with the approval of an official with the title of "Field Director, Human Resources" or "Manager, Employment and Development." Handbook EL–311, April 1990, § 313.53, appended to Defendant's SMF at Tab 30.

When the plaintiff appeared for his pre-employment physical examination on September 13, 1993 he certified on a written form that he had no medical disorder or physical impairment that could interfere in any way with the full performance of duties of the position for which he was applying. Medical Examination and Assessment form ("Medical Form"), appended to Defendant's SMF at Tab 31, at 1.[10] He did, however, disclose that he had undergone back surgery and that, as a result, he had received "compensation or a cash settlement from an employer, insurance company, government or other organization for injury or disease." *Id.* at 2 (erroneously referring to the surgery as dating from 1985). A little over a month after completing this form—on October 20, 1993—the plaintiff testified before the Maine Workers' Compensation Board that he was not then working because of his 1987 injury. Maine Workers' Compensation Board Hearing Transcript in Roy v. B.D.C., Inc. ("Workers' Comp. Tr."), appended to Defendant's

9. The plaintiff disputes this contention, relying on Nadeau's testimony before the EEOC. But all of the cited testimony is consistent with Nadeau's statement that he was concerned about the perceptions of other employees, as opposed to the actual possibility that any violent or otherwise criminal behavior would recur. Again, I take up the possibility that this explanation is pretextual, *infra.*

The defendant further contends that "[s]till another issue that surfaced was an inconsistency regarding Mr. Roy's representation on his Postal application that he had received an 'honorable' discharge from the military." Defendant's SMF at ¶ 10. The plaintiff objects to this contention assiduously, pointing out a lack of evidence that the issue of his military record had any effect on the Postal Service's decision. I agree. The only aspects of the record cited by the defendant in support of its contentions regarding the plaintiff's military record are a copy of his employment application and the record of his military service ultimately obtained by the Postal Service. Assuming these two documents offer inconsistent accounts of the plaintiff's military record, there is no evidence suggesting this issue played a role in the Postal Service's decision.

10. Relying on the Medical Form, the defendant contends that the job sought by the plaintiff had certain specific "vigorous physical requirements" that the defendant certified he could meet when he signed the form. Defendant's SMF at ¶ 12. The plaintiff properly points out that the Medical Form is inadmissible hearsay on the issue of what the actual job requirements were. Moreover, it would be wholly inappropriate for the court to determine that, by completing the form, the plaintiff was certifying that he had certain enumerated functional capabilities. These capabilities are indicated on the form by an official having circled certain pre-printed "Functional Requirements." Medical Form at 1. Presumably, these marks were made on the form by the "Appointing/Referring Official" and not the plaintiff. *See id.* (instructing such official to make these marks). According to the entries on the form, the Postal Service official who made these entries did so on September 14, 1993—a day after the plaintiff signed the statement at the top of the same page indicating he could fully perform the duties of the sought position. *Id.*

SMF at Tab 32, at 3.[11] At the time the plaintiff sought reemployment with the Postal Service, the painting firm for which he had previously worked and at which he was injured had gone out of business. U.S. Application for Employment completed by plaintiff, appended to Defendant's SMF at Tab 16, at 2.

The two openings for which the Postal Service considered the plaintiff in 1994 were both ultimately filled by men. Nadeau Aff. at 3.

## III. Legal Analysis of the Summary Judgment Motion

### A. The Rehabilitation Act Claim

Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability ... shall, solely be reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" conducted by, *inter alia*, the United States Postal Service. 29 U.S.C. § 794(a). Section 501(b) of the Act imposes on the Postal Service an affirmative obligation to provide adequate hiring, placement and advancement opportunities for individuals with disabilities. 29 U.S.C. § 791(b). In this circuit, either provision may properly form the basis of a civil action alleging discrimination based on disability. *Leary v. Dalton*, 58 F.3d 748, 752 (1st Cir.1995). The plaintiff does not specify which of these provisions he relies upon in pressing his claim of unlawful discrimination based on disability.

In a failure-to-hire case arising under section 504 of the Rehabilitation Act, the plaintiff bears the burden of establishing that he applied for a post in a federally-funded program or activity at the time he suffered from a cognizable disability, and that he was not hired solely because of the disability despite being qualified for the position. *Cook v. Rhode Island Dept. of Mental Health, Retardation & Hosps.*, 10 F.3d 17, 22 (1st Cir.1993). The plaintiff does not take

11. The record reflects that the plaintiff answered "yes" when asked by the hearing officer, "Is it because of your injury in 1987 that you're not working now?" Workers' Comp. Tr. at 3.

The defendant also asks the court to credit for summary judgment purposes the fact that, less than two months before the plaintiff's pre-employment physical, he received certain written advice from the attorney who represented him in connection with his workers' compensation claim. This letter warned the plaintiff that "[i]f the Workers' Compensation Board finds that you are not *totally* physically disabled and that you have not in good faith tried to find work within your physical capacity, the law requires that the Board reduce your compensation." Letter of James J. MacAdam to George N. Roy dated Jun. 29, 1993 ("MacAdam Letter"), appended to Defendant's SMF at Tab 21, at 2 (emphasis in original). For reasons explained, *infra*, the plaintiff's receipt of this legal advice is not a material fact, nor is the defendant's assertion that the amount of benefits received by the plaintiff "appears to reflect compensation for a 'total' disability." Defendant's SMF at ¶ 13. Further, and as the plaintiff points out, the MacAdam letter cannot be considered here because it would be inadmissable at trial as hearsay. In this regard, I cannot agree with the defendant that the letter would be admissible pursuant to Fed.R.Evid. 801(d)(2) as an admission of a party-opponent. *Cf. Harris v. Steelweld Equip. Co.*, 869 F.2d 396, 403 (8th Cir.1989) (attorney's statements to expert witness deemed admissions of client).

Seeking to establish that the plaintiff represented to the Maine Workers' Compensation Board ("Board") that he was suffering from a complete inability to work, the defendant moved subsequent to the briefing on the pending motions to supplement the summary judgment record. *See* Defendant's Motion and Incorporated Memorandum for Leave to Supplement, etc. (Docket No. 21). I granted the motion, and the defendant added to the record uncertified copies of two documents—one a "Petition for Review of Incapacity" filed with the Board in June 1993 by the plaintiff's former private sector employer, and the other the plaintiff's answer to this petition. These documents appear as attachments to Defendant's Supplement to Its Motion for Summary Judgment, etc. (Docket No. 22). The second document is particularly material, inasmuch as it appears to contain representations made through the plaintiff's counsel that he was receiving benefits for a "period of total incapacity to work" and that such incapacity has not "diminished or ended." The plaintiff objects to consideration of these documents because they are unauthenticated—a point with which I must agree. *See* 10A *Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure* § 2722 at 58–60 (2d ed. 1983) (to be admissible on summary judgment motion, "documents must be authenticated by and attached to an affidavit ... and the affiant must be a person through whom the exhibits could be admitted into evidence.").

exception to this premise, asserted by the defendant, and I therefore assume the plaintiff agrees for present purposes that he is subject to this standard whether his is a cause of action under section 501 or 504. *But see Leary,* 58 F.3d at 752 (noting that only section 504 contains sole causation test). Similarly, the defendant does not base his summary judgment motion as to this count on a contention that the plaintiff does not suffer from a cognizable disability. The complaint does not forthrightly state the nature of the claimed disability, although it is implicit therein, and clear from the plaintiff's other filings, that his claimed disability is alcoholism. The defendant's position is that, even if the plaintiff can demonstrate that he was not hired solely because he suffered from a cognizable disability, the defendant is entitled to summary judgment because the plaintiff is judicially estopped from asserting that he was qualified for the position in question.

Judicial estoppel is a doctrine, recognized in this circuit, that "operates to preclude a party from 'asserting a position in one legal proceeding which is contrary to a position it has already asserted in another.'" *UNUM Corp. v. United States,* 886 F.Supp. 150, 157 (D.Me.1995) (quoting *Patriot Cinemas v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987)); *see also Desjardins v. Van Buren Community Hosp.,* 37 F.3d 21, 23 (1st Cir.1994). The purpose is to prevent litigants "from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *UNUM,* 886 F.Supp. at 157 (quoting *Teledyne Indus., Inc. v. N.L.R.B.,* 911 F.2d 1214, 1218 (6th Cir.1990)). "Administrative and quasi-judicial proceedings ... are considered prior legal proceedings" for purposes of the doctrine. *Simo v. Home Health & Hospice Care,* 906 F.Supp. 714, 718 (D.N.H.1995) (citing *UNUM,* 886 F.Supp. at 158).

In this instance, the defendant contends the defendant is judicially estopped from asserting his qualification for work at the Postal Service because he represented himself as suffering from a total incapacity for work, and thereby obtained workers' compensation benefits, in proceedings before the Maine Workers' Compensation Board that were nearly contemporaneous with his effort to become reemployed by the Postal Service. In an appropriate case, a party's representation to an administrative tribunal that he is disabled from work is sufficient to estop the party from asserting a Rehabilitation Act claim for precisely the reasons stated by the defendant. For example, in the *Simo* case the plaintiff had made "multiple factual representations" to the Social Security Administration concerning her "disabling condition and inability to work," leading that agency to award her federal disability benefits. *Simo,* 906 F.Supp. at 721. Her Rehabilitation Act claim required her to assert that she was qualified to return to her former job—a position that was "totally inconsistent" with the position she took before the Social Security Administration. *Id.; see also McNemar v. Disney Store, Inc.,* 91 F.3d 610, 615 (3d Cir.1996) (plaintiff judicially estopped from asserting Americans With Disabilities Act discrimination claim after certifying total and permanent disability under penalty of perjury in request for Social Security and state disability benefits), *petition for cert. filed,* 65 U.S.L.W. 3467 (U.S. Dec. 16, 1996) (No. 96–966); *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581–82 (1st Cir.1992) (summary judgment on state-law disability discrimination claim appropriate where plaintiff represented himself as "totally disabled" on disability insurance claim form); *Hindman v. Greenville Hosp. Sys.,* 947 F.Supp. 215, 221–22 (D.S.C.1996) (plaintiff's prior assertion of disability in Social Security proceeding "inexorably" requires judicial estoppel as to claim of retaliatory discharge).

The plaintiff contends that judicial estoppel is inappropriate here because the concept of "total incapacity" under the Maine Workers' Compensation Act is a term with a specialized meaning—concerning not merely the physical inability to perform work, but also the unavailability of jobs in the claimant's community that he is capable of performing given his physical capacity for work—and that any assertions made in support of his claim of total incapacity are therefore not inconsistent with the position taken here that he is qualified to work for the

Postal Service. This position resonates with a note of caution recently sounded by the First Circuit in *D'Aprile v. Fleet Servs. Corp.*, 92 F.3d 1, 5 (1st Cir.1996). Although the *D'Aprile* opinion nowhere mentions the doctrine of judicial estoppel, it is significant for present purposes because it cautions against overreading the court's *August* opinion in a disability discrimination case involving a plaintiff who has previously made a disability insurance claim. *Id.* at 3. As such, it is the clearest articulation of the law in this circuit as to what effect a previous factual assertion regarding disability will have on a subsequent discrimination claim—whether that effect is described as judicial estoppel or not.

> *August* simply stands for the proposition that the plaintiff's ability to work with reasonable accommodation is an element of a handicap employment discrimination case under [the] Massachusetts law [at issue in that case]. Under the particular facts of that case, we found that August's application for disability insurance, combined with his demonstrated inability to perform any work (before or after the requested accommodation) eliminated any genuine issue as to his ability to work with reasonable accommodation. Since D'Aprile never claimed to have been totally disabled during the time she requested her accommodation, and demonstrated her ability to work with the accommodation she requested, the reasoning of *August* does not apply.

*Id.* at 5. Crucial was the definition of "totally disabled" in the disability plan for which the plaintiff in *D'Aprile* sought benefits; it involved "one who is unable to perform the material duties of his/her job for the entire regularly scheduled work week as the result of an illness or injury and requires the ongoing care of a physician." *Id.* at 4–5. Her assertion that she met this definition was "entirely consistent" with the central factual allegation of discrimination, involving her employer's refusal to accommodate her disability by providing her with a temporary part-time work schedule. *Id.* at 5; *see also Mohamed v. Marriott Int'l, Inc.*, 944 F.Supp. 277, 283 (S.D.N.Y.1996) (relying on *D'Aprile* to determine that a person disabled for Social Security purposes not judicially estopped from asserting discrimination claim under Americans with Disabilities Act); *but see Johnson v. U.S. Steel Corp.*, 943 F.Supp. 1108, 1115 (D.Minn.1996) (whether viewed as judicial estoppel or inability to establish essential fact, plaintiff cannot "competently argue" discrimination claim when, at time he filed administrative discrimination case, he was receiving workers' compensation benefits).

It would therefore seem of some significance, for purposes of determining whether judicial estoppel should apply here, for the court to limn the precise contours of "total incapacity" within the meaning of the Maine Workers' Compensation Act, assess the factual representations made by the plaintiff to the Workers' Compensation Board in support of his claim for benefits, and ascertain whether he ever flatly represented himself as "totally incapacitated" within the meaning of the state statute. As to the statutory issue, the relevant definition is nowhere near as elusive as the plaintiff implies by referring to "total incapacity" as "patois from the law of workers' compensation." Memorandum in Support of Plaintiff's Opposition, etc. (Docket No. 18) at 9. A determination that a workers' compensation claimant is entitled to benefits for "total incapacity" requires either "a total physical disability of the worker caused by work-related injury" or "a partial such physical disability coupled with the unavailability of work for a worker so disabled."[12] *Curtis v. Bridge Const. Corp.*, 428 A.2d 62, 64 (Me.1981).

12. Although Maine's workers' compensation statute has been frequently and extensively amended since the Law Court made this pronouncement, it appears that the basic principle articulated in *Curtis* has survived these revisions. The relevant provision in the current statute, 39–A.M.R.S.A. § 212(1), sets out the benefits awarded "[w]hile the incapacity for work resulting from the injury is total," but without stating an explicit definition of total incapacity—from which I infer the term has remained a constant. *See also Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 587 (Me. 1996) (noting that, notwithstanding statutory amendments, Maine law has not changed since 1922 concerning entitlement to total benefits if partially incapacitated but unable to find work).

In my opinion, a Maine workers' compensation claimant who seeks "total incapacity" benefits based on total physical disability would not be able to assert here that he was qualified for work at the Postal Service at a time contemporaneous with his request for the state-law benefits. *See, e.g., Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996) (employee seeking "temporary total disability benefits" under California workers' compensation law "necessarily asserted that she was unable to work"). One could say the claimant is judicially estopped from doing so, or one could simply determine, consistent with *August* and *D'Aprile,* that the prior benefits request fixes the factual record for summary judgment purposes in a manner fatal to the plaintiff's discrimination claim. On the other hand, the same cannot necessarily be said for a claimant who seeks total incapacity benefits because he is partially incapacitated and unable to find work.

The plaintiff would have the court place him in this latter category and thereby dispose of the judicial estoppel issue. I agree, at least insofar as I must conclude that the defendant has not met its burden as the party seeking summary judgment to demonstrate the absence of a genuine issue of material fact on this issue. Based on the record before me, it remains possible that the representations made by the plaintiff in seeking workers' compensation benefits are not inconsistent with his position here that he was able to work for the Postal Service.

In that regard, the letter written to the plaintiff by his workers' compensation attorney is wholly inapposite. Even if it were admissible for the truth of its assertion that the plaintiff was taking the position that he was suffering from total incapacity for purposes of his workers' compensation claim, the letter is simply not probative of any representations made by the plaintiff—either directly or through an agent—to any tribunal. That leaves only the plaintiff's testimony at his workers' compensation hearing that, as of that date, he was not working because of his 1987 injury. Such an assertion, while potentially at variance with his contentions here, is not necessarily so. For example, the plaintiff may have stopped working in 1987 because of the injury, fully recovered his capacity for work after his employer had gone out of business, and been unable to find another position. That inability, in turn, might be a function of a partial incapacity that would still permit him to perform the job he sought at the Postal Service—or it could even be simply the result of the exigencies of the job market.

The First Circuit has observed that

> judicial estoppel is not extrinsically a matter of fact or law; the issues that arise may turn out to be ones of raw fact, abstract law, or something in between, *e.g.,* the application of a general standard to a known set of facts.

*Desjardins,* 37 F.3d at 23. In the particularized present context, the result is at least partially fact-driven. *See, e.g., Simo,* 906 F.Supp. at 721 ("having already reaped the benefits of her past representations of total disability," plaintiff "may not now advance before this court any claim necessarily based on a contrary factual representation"); *McNemar,* 91 F.3d at 612 ("application of the doctrine of judicial estoppel always is factually driven"); *see also Hindman,* 947 F.Supp. at 221 (judicial estoppel an equitable doctrine that "escapes ironclad characterization and rigid application ... and its application hinges on the facts of each particular suit"); *Simon v. Safelite Glass Corp.,* 943 F.Supp. 261, 269 (E.D.N.Y.1996) ("paradigmatic judicial estoppel plaintiff" one who "played fast and loose with the system" by arguing "whatever state of facts seems advantageous at a point in time") (citation omitted). But whether the question is whether the facts asserted by the plaintiff in seeking workers' compensation benefits are inconsistent with his position here, or whether it is a matter of his previously asserted legal position being fatally incompatible with his present claim, it cannot be said that the position the plaintiff is advancing here—that he was qualified to perform the job for which the post office refused to rehire him—is inconsistent with one that was "unequivocally asserted" in the workers' compensation proceeding. *UNUM,* 886 F.Supp. at 158; *see also Backer v. Wyeth–Ayerst Labs.,* 949

F.Supp. 512, 516 n. 2 (W.D.Mich.1996) (judicial estoppel inappropriate where record is "unclear" as to when plaintiff in disability discrimination case previously claimed total disability). Accordingly, on the present record, summary judgment in favor of the defendant on the Rehabilitation Act claim is inappropriate. I stress, however, that my ruling is limited to the evidence Rule 56 permits me to consider in the present record and I intimate no opinion as to what my ruling might be if the defendant came forward with additional, cognizable evidence as to what transpired in connection with the workers' compensation proceeding.

### B. The Retaliation Claim

The first of the plaintiff's two Title VII claims presses the contention that the Postal Service refused to rehire him in retaliation for his prior challenge, on equal opportunity grounds, of his 1985 discharge. There is no dispute here that the plaintiff is unable to produce direct evidence of retaliatory animus. Therefore, and as the parties agree, the familiar *McDonnell Douglas* burden-shifting framework is applicable—both at trial and at the summary judgment stage. *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996) (noting, however, that court may "often dispense with strict attention" to framework on summary judgment motion and focus instead on "whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus"). Pursuant to that framework, the plaintiff must make out a *prima facie* case of retaliation, whereupon the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. *Id.* "If the defendant does so, the ultimate burden falls on the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." *Id.*

In this instance, it is not necessary for me to address the defendant's contention that the plaintiff cannot make out a *prima facie* case in light of the eight-year gap between the initial equal opportunity challenge and the alleged retaliation for it. Nor is it necessary for me to take up the defendant's contention that the plaintiff's *prima facie* case is fatally flawed because Nadeau did not know about the previous equal opportunity proceedings (an assertion that is not supportable given a plaintiff-favorable view of the record) or because LaChance had the requisite knowledge but nothing more. The plaintiff does not challenge the defendant's ability to articulate legitimate, non-retaliatory reasons for its decision, i.e., the plaintiff's relative lack of work history between 1985 and 1993 and his history of violent behavior. Therefore, assuming the existence of a *prima facie* case, the ultimate burden shifts to the plaintiff and, in this instance, the claim thereupon collapses given the dearth of evidence in the record that retaliatory animus tainted the employment decision at issue. *See Mesnick v. General Elec. Co.,* 950 F.2d 816, 828 (1st Cir.1991) (summary judgment for defendant on retaliation claim appropriate where plaintiff "tendered nothing, direct or circumstantial, suggesting a retaliatory animus"). As the First Circuit has recently and colorfully pointed out, "defeating a properly documented motion for summary judgment requires more than the jingoistic brandishing of a cardboard sword"—especially "in respect to claims or issues on which the nonmovant bears the burden of proof." *International Assn. of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.,* 103 F.3d 196, 199–200 (1st Cir.1996).

I agree with the plaintiff that this case can be distinguished from *Mesnick,* and others cited by the defendant, in which a long time elapsed between the protected action and the alleged retaliation for that action. In those cases, the plaintiff remained employed by the defendant, and suffered no retaliation, for long periods. Here, the plaintiff's bid for reemployment marked the defendant's first opportunity for retaliation. But this does not obviate the plaintiff's burden to come forward with evidence that would permit a rational factfinder to determine that the defendant's proffered explanation for the Postal Service's action was a pretext for retaliation. This the plaintiff has utterly failed to do. The defendant is therefore entitled to summary judgment on the retaliation claim.

### C. The Sex Discrimination Claim

The defendant next contends it is entitled to summary judgment on the plaintiff's Title VII claim of sex discrimination because the record reveals no evidence that the Postal Service discriminates against men generally and because, in particular, the two persons hired instead of the plaintiff were also both men. In his opposition to the summary judgment motion, the plaintiff concedes that discovery has not produced evidence that would support a *prima facie* case of sex discrimination. Summary judgment in favor of the defendant on this count is therefore appropriate.

### D. The Promissory Estoppel Claim

The defendant advances a variety of contentions as to why he is entitled to judgment on the plaintiff's state-law claim of promissory estoppel, but I need address only one as it is dispositive: the lack of any writing sufficient to satisfy Maine's statute of frauds, 33 M.R.S.A. § 51.

Maine law recognizes a cause of action for promissory estoppel as an equitable variation on the traditional legal claim of breach of contract, *viz:*

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action of forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 49–50 (Me.1996) (quoting *Restatement (Second) of Contracts* ("*Restatement*") § 90). As a general proposition, "[t]he promise relied on by the promisee need not be express but may be implied from a party's conduct." *June Roberts Agency*, 676 A.2d at 50. It therefore follows that when applying the equitable doctrine set forth at Section 90 of the *Restatement* the court is not bound by the iron-clad rule of law set forth in the statute of frauds—that unless the promise or "some memorandum or note thereof" appears in a writing that is signed by the party to be charged, no action may be maintained when, *inter alia*, the agreement in question "is not to be performed within one year from the making thereof." 33 M.R.S.A. § 51. But neither does a plaintiff automatically shed the statute's requirements by invoking promissory estoppel.

Section 90 of the *Restatement* describes the circumstances in which, in essence, the court deems a contract to have been made despite a lack of consideration. Elsewhere, at section 139, the *Restatement* makes clear that "the requirement of consideration is more easily displaced than the requirement of a writing."[13] *Restatement*, § 139, cmt. b. Hence the Law Court's opinion in *Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72 (Me. 1991), invoked by the defendant. In *Stearns*, the Law Court affirmed that the doctrine of equitable estoppel—as distinct from promissory estoppel because the former turns on the promisor's fraudulent conduct—can permit a plaintiff to avoid application of the statute of frauds. *Id.* at 74. But the court went on to declare that, as a matter of Maine law, the doctrine of promissory estoppel would not be available to defeat the requirement of a signed writing in cases involving employment contracts requiring more than one year to perform. *Id.* The reason is that it is too difficult to distinguish factually the reliance interests in a promissory estoppel claim from "the ordinary preparations that attend any new employment." *Id.* at 75.

Although *Stearns* involved a breach-of-contract claim, and the plaintiff's assertion that

13. The main text of section 139 sets out certain circumstances that are "significant" in determining whether justice requires non-application of the writing requirement:

> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;
> (c) the extent to which the action of forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;
> (d) the reasonableness of the action or forbearance;
> (e) the extent to which the action or forbearance was foreseeable by the promisor.

*Restatement* § 139.

the defendant was equitably estopped from invoking the statute of frauds, *id.* at 73, there is no reason to suppose this holding is not fully applicable to a case such as this one where the plaintiff directly frames his cause of action as one for promissory estoppel. Nor do I eschew application of the *Stearns* rule because the record appears to lack evidence that the promise the plaintiff seeks to enforce required more than a year to perform. *See, e.g., Burnell v. Town of Kingfield,* 686 A.2d 1072, 1073–75 (Me.1996) (indefinite contract of employment terminable at will; therefore no need to consider statute of frauds). The plaintiff does not raise this objection in response to the defendant's reliance on *Stearns,* and I thus regard the issue as waived. Moreover, absent the lack of signed writing, it is obviously true that as the contract at issue moves beneath the one-year threshold and approaches (or becomes) a promise of employment at will, the reliance interest that would support a claim of promissory estoppel likewise approaches the vanishing point.

Rather than take the position that the statute of frauds is inapplicable, the plaintiff contends that the requirement of a signed writing is satisfied by the "Drug Screening—Personnel Notification Form" that appears in the record as Tab 8 to the Plaintiff's SMF. This form is addressed to a Portland physician and advises that the plaintiff has been scheduled to submit a specimen for urinalysis drug testing. Included on the form is a space for the physician, or one of the physician's nurses, to indicate that the test was performed and the applicant was found to be qualified for employment. The form appears to have been so completed. According to the plaintiff, this completed form—when viewed in combination with Postal Service regulations specifying that such drug testing is only performed after an applicant has been accepted for employment—is a writing adequate to establish that the Postal Service tendered him an offer of employment. I disagree. The only inference this evidence might tend to support is that the Postal Service did not follow its regulations. Even if the plaintiff's contention had merit, he does not explain how the court could construe this document as meeting the requirement of a "signed" writing, when the only signature appearing therein is that of the nurse who reported the test results back to the Postal Service.

The defendant is therefore entitled to summary judgment on the promissory estoppel claim, and it is not necessary to address the defendant's contentions that no cause of action for promissory estoppel can lie against the Postal Service because it is an organ of the federal government, that the plaintiff waived the claim by not presenting it at the administrative level, and that the plaintiff cannot establish that the Postal Service reasonably expected him to rely on the statements that he construed as a job offer.

## IV. Legal Analysis of the Motion to Dismiss

That leaves Counts V and VII of the complaint, which are the subject of the defendant's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. In evaluating this motion, consistent with the standard set forth, *supra,* I overlook the record developed in connection with the summary judgment motion and consider only the well-pleaded facts asserted in the complaint, drawing any reasonable inferences that are favorable to the plaintiff.[14] Because it is logical to do so, I take up the issues raised by the dismissal motion in reverse order.

### A. Emotional Distress

The defendant initially urged dismissal of Count VI because it read that count as one alleging negligence, and took the position that Title VII provides the exclusive source of remedies to the plaintiff in light of that statute and the Federal Tort Claims Act. In response, the plaintiff clarified that Count VI, though not pleaded as artfully as it

14. The plaintiff objects to the dismissal motion as untimely, inasmuch as it was filed well after the defendant answered the complaint. Although Fed.R.Civ.P. 12(b) does indeed require a motion made thereunder to precede the filing of an answer, Rule 12(h)(2) permits a defendant who has already answered to move for judgment on the pleadings based on a failure to state a valid claim. So treated, the instant motion is timely.

might have been, is intended in part to invoke the explicit authority in Title VII for recovery of damages in connection with "emotional pain." *See* 42 U.S.C. § 1981a(a)(1) (complaining party "may recover compensatory and punitive damages as allowed in subsection (b) of this section"); *id.* at subsection (b)(3) (providing for, subject to dollar limitations, compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"). The defendant's reply advances no argument as to why the plaintiff is not entitled to seek damages for emotional pain in connection with his discrimination claim, and accordingly his request to dismiss this aspect of Count VI is denied.

The plaintiff also asks the court to construe Count VI as, in part, seeking state-law tort damages for negligent infliction of emotional distress incident to his claim of promissory estoppel. In Maine, "[r]ecovery for negligent infliction of emotional distress is premised on the existence of an underlying tort or, in limited circumstances, contract breach." *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617, 621–22 (Me.1996). Thus, the summary judgment in favor of the defendant on the promissory estoppel claim is fatal to the plaintiff's claim for emotional-distress damages under state law. Even if the promissory estoppel claim survived, it would not present one of the "limited circumstances" in which a contract claim may take the place of the requisite underlying tort. *See id.* at 621 n. 3 (contract must be such that breach would cause "serious emotional disturbance," as in "contracts between carriers and innkeepers, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death") (citations omitted). Accordingly, it is not necessary to address the exclusivity and immunity issues raised in this regard by the defendant. He is entitled to dismissal of Count VI to the extent that it seeks to recover damages pursuant to state law.

### B. Punitive Damages

Count V is a claim for punitive damages. In urging its dismissal, the defendant contends the Postal Service is not subject to punitive damages under the Rehabilitation Act.

The statutory authority upon which the plaintiff relies in arguing to the contrary is 42 U.S.C. § 1981a. As a preliminary matter, I note that section 1981a authorizes compensatory and punitive damages in cases of disability discrimination arising under the Rehabilitation Act, but only as to violations of section 501. *See* 42 U.S.C. § 1981a(a)(2). Therefore, and notwithstanding the discussion, *supra*, of plaintiff's accession to a liability standard articulated pursuant to section 504, to reach the issue of punitive damages under the Rehabilitation Act the court must assume the plaintiff's claim also arises under section 501.

The plaintiff relies on *Baker v. Runyon*, 922 F.Supp. 1296 (N.D.Ill.1996), in which the district court held that section 1981a permits recovery of punitive damages from the Postal Service notwithstanding principles of sovereign immunity and the language in section 1981a(b)(1) exempting "a government, government agency or political subdivision" from such liability. *Id.* at 1298–1299. The defendant relies on a variety of district court cases finding the Postal Service immune from punitive damages,[15] to which my own research adds the recent cases of *Ausfeldt v. Runyon*, 950 F.Supp. 478 (N.D.N.Y.1997), *Tuers v. Runyon*, 950 F.Supp. 284 (E.D.Cal.1996), and *Miller v. Runyon*, 932 F.Supp. 276 (M.D.Ala.

15. The six cases relied upon by the defendant are ultimately not helpful. The plaintiff conceded the issue at hand in *Suhr v. Runyon*, 1995 WL 617478 at *3 (N.D.Ill. Oct. 12, 1995), and *Montalvo v. United States Postal Serv.*, 887 F.Supp. 63, 66 (E.D.N.Y.1995). *Reynolds v. Frank*, 786 F.Supp. 168 (D.Conn.1992), rejects without discussion the possibility of punitive damages against the Postal Service under section 1981a, a holding that is dictum in light of the opinion's overall determination that the Civil Rights Act of 1991, which created the present version of section 1981a, is not retroactive. *Id.* at 168 n. 1 and 170. *Edmond v. United States Postal Serv.*, 727 F.Supp. 7 (D.D.C.1989), and *McLean v. United States Postal Serv.*, 544 F.Supp. 821 (W.D.Pa. 1982), antedate the 1991 Act, as does *Bowen v. United States Postal Serv.*, 470 F.Supp. 1127 (W.D.Va.1979), *aff'd in part and rev'd in part on other grounds*, 642 F.2d 79 (4th Cir.1981), *rev'd on other grounds*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

1996). It should also be noted that an unpublished opinion of this court has construed section 1981a, albeit in dictum, as permitting a plaintiff to recover punitive damages from the Postal Service. *See Lussier v. Runyon,* 1993 WL 434078 at *2 (D.Me. Oct. 15, 1993) (holding that a plaintiff may sue Postal Service under section 501 of Rehabilitation Act).

I conclude that the view articulated in *Baker* is the more reasoned one. As did that court, I begin with certain observations made by the Supreme Court in *Loeffler v. Frank,* 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), which stands for the proposition that the Postal Service is liable for prejudgment interest on a Title VII sex discrimination claim, notwithstanding principles of sovereign immunity. *Id.* at 565, 108 S.Ct. at 1974–75. The Court noted that when Congress created the Postal Service in 1970, it empowered the new entity "to sue and be sued in its official name," as part of a general congressional design to cause the Postal Service to be run more like a private business than was its departmental predecessor. *Id.* at 555–56, 108 S.Ct. at 1969–70 (*quoting* 39 U.S.C. § 401(1)). Accordingly, the sue-and-be-sued clause "must be liberally construed and ... the Postal Service's liability must be presumed to be the same as that of any other business." *Id.* at 556, 108 S.Ct. at 1970 (citation omitted). Therefore, "Congress is presumed to have waived any otherwise existing immunity of the Postal Service" absent a convincing basis for departing from this rule of liberal construction of the enabling legislation. *Id.*

Against that backdrop, Congress created the punitive damages remedy in Title VII cases (and cases such as this one, where a claim under section 501 of the Rehabilitation Act entitles the plaintiff to Title VII remedies) but stressed that a complaining party may not recover such damages from "a government, government agency or political subdivision." 42 U.S.C. § 1981a(b)(1). The question thus reduces to whether the Postal Service is a "government agency" within the meaning of section 1981a. Addressing that issue, the defendant here catalogs certain of the rights and responsibilities vested in the Postal Service through its enabling legislation, correctly pointing out that many of them are traditionally considered functions of the sovereign, involve the use of public funds and generally cause the Postal Service to resemble and be treated like an organ of the federal government. This begs the question already decided in *Loeffler,* which is whether an entity bearing such characteristics will enjoy the presumption of sovereign immunity in light of its unique legislatively created status. *Loeffler* was binding precedent well before the 1991 Civil Rights Act, and the court can only infer that Congress was aware of the liberal construction rule articulated therein but did not choose to make clear that the Postal Service is a government agency and thus not subject to punitive damages under section 1981a. In other words, I agree wholeheartedly that "[i]f Congress had wanted to exempt the Postal Service from punitive damages in the 1991 Act, it would have mentioned it along with governmental agencies" as it did, for example, at 42 U.S.C. § 2000e–16(a).[16] *Baker,* 922 F.Supp. at 1299.

The recent authorities to the contrary are not persuasive. *Tuers* characterizes the problem as a "fairly straightforward exercise in statutory interpretation," *Tuers,* 950 F.Supp. at 285 n. 1, but does not explain how the Postal Service can be a "government agency" within the meaning of section 1981 given the rule set forth in *Loeffler.* Rather, the *Tuers* court concludes that *Loeffler* can be "easily distinguished" because the prejudgment interest at issue there is not subject to the kind of express limitation to which

16. The cited provision explicitly outlaws discrimination based on race, color, religion, sex or natural origin in connection with personnel actions taken by "military departments," "executive agencies," "the United States Postal Service and the Postal Rate Commission," certain units of the government of the District of Columbia, certain units of the legislative and judicial branches of the federal government and the Library of Congress. 42 U.S.C. § 2000e–16. It also bears noting that Congress specifically enumerated the Postal Service as an agency subject to both sections 501 and 504 of the Rehabilitation Act. This bolsters the inference that Congress, in writing the statutes that would prohibit federally created and/or federally funded entities from discriminating against and denying opportunities to persons with disabilities, understood that the Postal Service is anything but a garden variety federal agency.

punitive damages, an "extraordinary remedy," are subject via the express language in section 1981a. *Id.* at 285–86. While I agree with the observation in *Tuers* that it "cannot readily be inferred" from the sue-and-be-sued clause of the Postal Service's authorizing legislation that the defendant is amenable to punitive damages, it is my view that the *Tuers* court interprets the wrong statute. Whether or not *Loeffler* can be distinguished, it establishes a presumption that lower courts are obliged to follow in the interpretation of section 1981a and any other congressional efforts to define the limits of the Postal Service's civil liability.

*Ausfeldt,* by contrast, reaches the same result as *Tuers* but based entirely on a determination that "Second Circuit precedent impels the finding that the Postal Service is in fact immune from punitive damages.". *Ausfeldt,* 950 F.Supp. at 488. This court is bound by precedents of the First Circuit Court of Appeals and therefore is unable to rely on the reasoning set forth in *Ausfeldt.* Finally, *Miller* relies on a variety of circuit precedents, none of them from this circuit, to conclude that "[c]ourts regularly treat the [Postal Service] as a governmental agency for the purposes of Title VII," and therefore the *Miller* court determined that the Postal Service is a "government agency" within the meaning of section 1981a without even discussing the rule set out in *Loeffler. Miller,* 932 F.Supp. at 277 (citations omitted). None of these three cases alters my view that Congress could have and would have explicitly exempted the Postal Service from amenability to punitive damages under Title VII had it intended to make the defendant immune from this remedy in connection with discrimination claims.

The defendant also contends that the plaintiff is not entitled to recover punitive damages in connection with the non-Rehabilitation Act claims. Since these other claims do not survive for reasons already stated, it is not otherwise necessary to address the parties' positions concerning punitive damages on them. The defendant is entitled to dismissal of Count V to the extent that it seeks punitive damages for anything other than the asserted violation of the Rehabilitation Act.

### V. Conclusion

For the foregoing reasons, the pending motions are **GRANTED IN PART and DENIED IN PART** as follows: Judgment shall enter in favor of the defendant on Counts II (retaliation), III (sex discrimination) and IV (promissory estoppel). Count V (punitive damages) is dismissed to the extent that it seeks punitive damages under any claim other than that arising under the Rehabilitation Act. Count VI (emotional distress) is dismissed to the extent it seeks to recover on a state-law theory of negligent infliction of emotional distress. The motions are otherwise **DENIED.**