**Mitzi BAKER, Plaintiff,**

v.

**Marvin T. RUNYON, in his official capacity as Postmaster General of the United States, Defendant.**

No. 95 C 4257.

United States District Court,
N.D. Illinois,
Eastern Division.

April 18, 1996.

As Corrected May 1, 1996.

Robert D. Whitfield, Chicago, Illinois, for Plaintiff.

Eileen Marutzky, Asst. U.S. Atty., Chicago, Illinois, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendant Marvin T. Runyon to strike the claim of plaintiff Mitzi Baker for punitive damages.

## I. *BACKGROUND*

Plaintiff filed her complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("1964 Act"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, *et seq.* ("1991 Act"), alleging sex discrimination and retaliation. She seeks both compensatory and punitive damages against her employer, the United States Postal Service ("Postal Service"). The only issue defendant presents in his motion to strike is whether punitive damages are available against the Postal Service in this case. At the outset, we note that defendant fails to suggest under what rule he is moving. Pursuant to Fed.R.Civ.P. 12(f), a party must file its motion to strike prior to responding to the targeted pleading or within 20 days after the service of that pleading. Here, plaintiff filed her complaint on June 24, 1995, and defendant filed his answer thereto on September 25, 1995. The instant motion, then, is untimely under Rule 12(f). Defendant's motion is silent as to why such untimeliness should be overlooked in this case. Because the question of whether the Postal Service enjoys sovereign immunity from punitive damages is jurisdictional in nature, *Edwards v. U.S. Dept. of Justice*, 43 F.3d 312, 317 (7th Cir.1994), the court may address it any time. Fed.R.Civ.P. 12(h)(3). We choose to do so.

## II. *ANALYSIS*

Ordinarily, sovereign immunity protects the federal government from suit. *Loeffler v. Frank*, 486 U.S. 549, 554, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988). This immunity, however, may be waived. Under the Federal Tort Claims Act ("FTCA"), the government is liable for tort claims but retains its immunity from liability for interest prior to judgment or for punitive damages. 28 U.S.C. § 2674. Congress has also waived the sovereign immunity of some federal entities by providing, in their enabling legislation, that they may sue and be sued. *Loeffler*, 486 U.S. at 554, 108 S.Ct. at 1969. The Supreme Court has explained that:

such waivers by Congress of governmental immunity ... should be liberally construed ... Hence, when Congress establishes an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must clearly be shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such a showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue and be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

*F.H.A. v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940), *quoted in Loeffler*, 486 U.S. at 554–55, 108 S.Ct. at 1969. The defendant herein, the Postal Service, is subject to just such a "sue-and-be-sued" clause.

When Congress created the Postal Service in 1970, it empowered it "to sue and

be sued in its official name." 39 U.S.C. § 401(1). This was part of Congress' intent that the Postal Service "be run more like a business than its predecessor, the Post Office Department." *Loeffler,* 486 U.S. at 556, 108 S.Ct. at 1969. Congress saw to it that the Postal Service cast off its "cloak of sovereignty and assumed the status of a commercial enterprise." *Loeffler,* 486 U.S. at 565, 108 S.Ct. at 1974. In *Loeffler,* the Court found this waiver of sovereign immunity opened up the Postal Service to interest awards. *Id.* at 557, 565, 108 S.Ct. at 1970, 1975. With respect to the Postal Service, then, there has been a full waiver of sovereign immunity that would allow a recovery of punitive damages where they would be available from a private commercial enterprise. Defendant does not appear to argue otherwise.[1] Thus, the inquiry becomes "whether the source of substantive law upon which the claimant relies provides an avenue for relief." *F.D.I.C. v. Meyer,* 510 U.S. 471, ——, 114 S.Ct. 996, 1004, 127 L.Ed.2d 308 (1994).

■ The plaintiff's claim for punitive damages herein was created by the 1991 Act. Under the 1964 Act, Title VII relief was limited to "equitable" remedies—primarily backpay. 1964 Act, 42 U.S.C. § 2000e–5(g); *Landgraf v. USI Film Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1490, 128 L.Ed.2d

229 (1994). The 1991 Act significantly expanded the monetary relief potentially available, to include compensatory damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 1991 Act, 42 U.S.C. § 1981a(b)(3); *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1491. In addition, the 1991 Act made punitive damages available as follows:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. 1981a(b)(1). The question here is whether the Postal Service is exempted from exposure to punitive damages as a "government, government agency or political subdivision."

To defendant, it is self-evident that the Postal Service is exempt from punitive damage liability under § 1981a(b)(1), because it is a federal entity that is part of the federal government. (*Memorandum in Support of Defendant's Motion* ("*Def.Mem.*"), at 2). It

---

1. Sue-and-be-sued entities are presumed to have fully waived immunity unless there is a clear showing that the type of suit is not consistent with the statutory scheme, that a limitation is necessary to avoid grave interference with the performance of a governmental function, or that it was plainly the purpose of Congress to use the sue-and-be-sued clause in a narrow sense. *F.D.I.C. v. Meyer,* 510 U.S. 471, ——, 114 S.Ct. 996, 1003, 127 L.Ed.2d 308 (1994). The defendant herein does not make such a showing but, instead, discusses the general policy considerations that weigh against assessing punitive damages against the government. (*Def.Mem.* at 4–6). This tactic essentially ignores the sue-and-be-sued waiver and begs the question of whether the Postal Service is the same as "the government."

Ignoring those failings for the moment, the concerns regarding punitive damages defendants raise—essentially those discussed in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–270, 101 S.Ct. 2748, 2759–2761, 69 L.Ed.2d 616 (1981)—are not as relevant to the Postal Service as they are to the federal government itself or other governmental entities. The central con-

cern regarding the assessment of punitive damages against a government entity is that it would punish taxpayers as opposed to the entity. *Newport,* 453 U.S. at 267–268, 101 S.Ct. at 2759–2760. In this case, however, the Postal Service is not supported by tax dollars and has not tax-levying authority. Punitive damages against the Postal Service would be more akin to a judgment against a major utility than a government entity. Such an award might filter down to citizens, but would do so through increased rates—not taxes. Another traditional concern is the prejudicial effect that a government's taxing authority would have on a jury's fixing of the amount of punitive damages. *Id.* at 270–271, 101 S.Ct. at 2761–2762. In this case, once again, the Postal Service does not have the kind of taxing authority discussed in *Newport.* Furthermore, there is a cap in the amount of damages available in this case. 42 U.S.C. § 1981a(b)(3). Defendant has not addressed these distinctions, choosing instead to simply equate the Postal Service with the federal government itself, essentially ignoring the sue-and-be-sued nature of the Postal Service that sets it apart from other governmental entities and the federal government itself.

is, in fact, "an *independent* establishment of the Executive Branch of the government of the United States ..." 39 U.S.C. § 201. We are not as unhesitatingly convinced that an "independent establishment" is the same as a "government, government agency or political subdivision." Defendant does little to support its contention.

The cases upon which defendant relies are less than convincing. (*Def.Mem.* at 2–3). In *Montalvo v. U.S. Postal Service*, 887 F.Supp. 63 (E.D.N.Y.1995), the question of the Postal Service's status was not litigated, but conceded by the plaintiff therein. 887 F.Supp. at 66. In *Suhr v. Runyon*, No. 95 C 50087 (N.D.Ill. Oct. 12, 1995) 1995 WL 617478, the court found that a suit against the Postal Service was "in essence a suit against a federal agency," citing *Beth v. Espy*, 854 F.Supp. 735, 737 (D.Kan.1994). *Beth* dealt with a suit against the Department of Agriculture which, unlike the Postal Service, actually *is* a government agency and is quite unlike a "sue-and-be-sued" entity in that it had sovereign immunity from punitive damages prior to the 1991 Act. *See Doe v. American Nat. Red Cross*, 847 F.Supp. 643, 648 (W.D.Wis.1994) (distinguishing federal instrumentalities from federal agencies); *Greenberg v. Republic Federal Savings & Loan Ass'n*, 94 C 3789 (N.D.Ill. May 1, 1995) 1995 WL 263457 (noting same distinction). As already noted, Congress relinquished the Postal Service's sovereign immunity in 1970.

Beyond these citations, and its own tautologous recitations, the defendant offers little to show that the Postal Service qualifies as "a government, government agency or political subdivision." For example, defendant notes that the legislative history of the 1991 Act shows that Congress intended that the remedies available under Title VII did not exceed those available under 42 U.S.C. § 1981. *See Johnson v. City of Fort Lauderdale, Fla.*, 903 F.Supp. 1520, 1528 (S.D.Fla.1995). Arguing that "governmental entities" are not liable for punitive damages under § 1981, defendant suggest that the Postal Service is, therefore, not liable for punitive damages in this case. (*Def.Mem.* at 6). Once again, however, defendant fails to address the "sue-and-be-sued" commercial nature of the Postal Service. The Postal Service simply cannot be equated with the municipalities and political subdivisions dealt with in the cases upon which defendant relies. *See Poolaw v. City of Anadarko*, 738 F.2d 364 (10th Cir.1984); *Heritage Homes, Inc. v. Seekonk Water Dist.*, 670 F.2d 1 (1st Cir.1982).

Defendant also refers to Congress' mention of the Postal Service along with executive agencies in 42 U.S.C. § 2000e–16(a). When Congress extended Title VII's proscription against discrimination in employment to government agencies, it referred to "executive agencies" *in addition to* the Postal Service. 42 U.S.C. § 2000e–16(a). Defendant argues that this evinces Congressional intent to treat the Postal Service the same as other agencies. We can accept that premise with regard to Title VII liability, but not with regard to the punitive damage liability Congress created in the 1991 Act. While § 2000e–16(a) treats the Postal Service the same as an executive agency, it also treats it the same as a military department and the Library of Congress. The provision does not define the Postal Service as an agency, however, anymore than it defines it as a military department or the Library of Congress. The fact that Congress felt it necessary to specifically mention the Postal Service in addition to executive agencies in § 2000e–16(a) indicates—to the contrary of defendant's position—that Congress considered the Postal Service something other than an agency. When, in the 1991 Act, Congress exempted "government, government agency, or political subdivision," it did so without mention of the Postal Service. If the Postal Service was not considered a governmental agency in the drafting of § 2000e–16(a), it does not follow that the Postal Service became an agency—thereby included in the exemption from punitive damages—sometime prior to the drafting of the 1991 Act. If Congress had wanted to exempt the Postal Service from punitive damages in the 1991 Act, it would have mentioned it *along with* governmental agencies in the same fashion it did in § 2000e–16(a). Defendant's statutory construction argument, then, is no more convincing than his other offerings.

The issue that defendant continues to leave unresolved is the effect of the Postal Service's "sue-and-be-sued" nature on defendant's assertions of general propositions against the imposition of punitive damages on the sovereign. None of these arguments do anything to convince the court that the Postal Service and the sovereign are one and the same. Indeed, outside this courtroom, the Postal Service spends a fair amount of money in advertising, through the likes of George C. Scott, to convince us otherwise, touting the fact that the Postal Service receives no support through tax dollars whatsoever. While admirable, this fact, like the arguments defendant advances herein, undermines rather than supports defendant's claim of immunity from punitive damages.[2]

## III. CONCLUSION

Defendant herein has moved, in what appears to be an untimely fashion, to strike plaintiff's claim for punitive damages in this case. The arguments defendant advances against Postal Service liability might support the exemption of governmental agencies in general, but fail to address the Postal Service's status as a "sue-and-be-sued" entity. We cannot accept the analogies defendant draws between the Postal Service and municipalities, water districts, or the Department of Agriculture. Congress intended the Postal Service to be a commercial enterprise wholly unlike those entities. Nor can we accept defendant's suggestion that Congress' mention of the Postal Service along with executive agencies defines the Postal Service as an executive agency anymore than the Postal Service's mention with military departments defines it as one of those. In the end, the defendant has failed to touch on the significance of the Postal Service as a "sue-and-be-sued" entity and, consequently, we are unconvinced that the plaintiff's claim for punitive damages should be stricken.

2. Indeed, one test to determine the applicability of sovereign immunity—that is, whether a suit is against the sovereign—is whether a "judgment would expend itself on the public treasury." *U.S. v. Rural Elec. Convenience Co–Op. Co.*, 922 F.2d 429, 433 (7th Cir.1991) (*quoting Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10

For the foregoing reasons, it is hereby ordered that the defendant's motion to strike the plaintiff's claim for punitive damages is DENIED.

**DATE:** April 18, 1996.

L.Ed.2d 15 (1963)). Although defendant makes no mention herein of the degree to which the Postal Service is divorced from the treasury, it would appear that, to the extent it is unsupported by tax dollars, a judgment against it would not draw from the public treasury.