**Loni CLEVELAND and Carolyn Rowley (Selby), Plaintiffs,**

v.

**Marvin T. RUNYON, Postmaster General, Defendant.**

**No. CV–N–96–0783–ECR.**

United States District Court,
D. Nevada.

July 21, 1997.

G. David Robertson, Eric A. Nickel, Robertson & Benevento, Reno, NV, for Plaintiffs.

Kathryn E. Landreth, U.S. Atty., Shirley Smith, Asst. U.S. Atty., Reno, NV, for Defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

Defendant Marvin Runyon, Postmaster General of the United States, has, through counsel the United States Attorney, moved (Doc. # 13) to strike from Plaintiffs' Complaint their prayer for punitive damages. Plaintiffs, through counsel, have opposed the motion (Doc. # 14), and Defendant has replied (Doc. # 15); the motion is therefore ripe for decision.

This is an action by employees of the U.S. Postal Service for gender discrimination pursuant to Section 717 of Title VII of the 1964 Civil Rights Act, currently codified at 42 U.S.C. § 2000e–16. This statute prohibits workplace discrimination on the basis of race, gender, and ethnicity against postal workers, and grants those workers civil remedies for unlawful workplace discrimination similar to those provided to employees of private businesses under 42 U.S.C. § 2000e–5.

In 1991 Congress amended Title VII, and for the first time permitted workers suffering unlawful discrimination to recover not only the formerly exclusive remedies of reinstatement, back pay and other equitable relief, but also compensatory and punitive damages. Civil Rights Act of 1991, Pub.L. 102–166, tit. I, § 102, 105 Stat. 1072 (1991) (codified at 42 U.S.C. § 1981a). However, the right to recover punitive damages under the amended civil rights laws is limited: Governments, government agencies, and political subdivisions remain immune from liability for punitive damages, even after the 1991 amendments. 42 U.S.C. § 1981a(b)(1).

It is this subparagraph, Section 1981(b)(1), upon which Defendant relies in his motion to strike Plaintiffs' prayer for punitive damages. Plaintiffs, however, argue that the U.S. Postal Service does not qualify as a "government agency" within the meaning of the exclusionary parenthetical phrase of Section 1981a(b)(1). They cite in support of this argument several decisions of the U.S. Supreme Court on the issue of waivers of sovereign immunity in general, and several federal district court decisions on the immunity and sovereign status of the Postal Service in particular.

Generally speaking, of course, the government of the United States enjoys sovereign immunity from civil suit. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Title VII of the 1964 Civil Rights Act originally excluded federal entities from its definition of "employers" liable for discrimination. Congress amended Title VII in 1972 to permit the imposition of liability for unlawful discrimination upon federal entities, including the Postal Service. Equal Employment Opportunity Act of 1972, § 717, 86 Stat. 111 (current version at 42 U.S.C. § 2000e–16). In so do-

ing it was the intent of Congress to provide federal workers with the "full rights available in the courts as are granted to individuals in the private sector under Title VII." S. Rep. No. 92–415, at 16 (1971) (*quoted in Chandler v. Roudebush*, 425 U.S. 840, 841, 96 S.Ct. 1949, 1950, 48 L.Ed.2d 416 (1976)). Section 717 therefore "simultaneously provided federal employees with a cause of action under Title VII and effected a waiver of the Government's immunity from suit." *Loeffler v. Frank*, 486 U.S. 549, 559, 108 S.Ct. 1965, 1971, 100 L.Ed.2d 549 (1988).

But even after the 1972 amendments to Title VII, neither private businesses nor governmental entities could be held liable for any damages; not until after the 1991 Civil Rights act were damages recoverable under Title VII by any plaintiff from any defendant. *See Chenault v. United States Postal Serv.*, 37 F.3d 535, 536–37 (9th Cir.1994); *Shah v. Mount Zion Hosp. and Med. Ctr.*, 642 F.2d 268, 272 (9th Cir.1981). It is, therefore, the terms of this new statute, 42 U.S.C. § 1981a, and the nature of the Postal Service itself, which determine the extent to which recovery under Title VII was broadened, both as to private defendants and governmental ones.

Defendant argues that *Silver v. United States Postal Serv.*, 951 F.2d 1033 (9th Cir. 1991) "disposes" of the issue; in that case the Court of Appeals concluded that Congress, in enacting the Postal Reorganization Act of 1970, 39 U.S.C. § 101 et seq., "could not have made its intent more clear that the Postal Service was to remain a part of the U.S. Government and to perform executive branch functions within that government." *Silver*, 951 F.2d at 1035.

This court is not so sure that Silver "disposes" of the issue. The 1991 Civil Rights Act exempts from liability for punitive damages the "government, government agenc[ies, and] political subdivision [s]." 42 U.S.C. § 1981a(b)(1). The Act does not exempt entities which are "parts" of the executive branch, but only "agencies" of the executive branch. Different federal governmental entities are denominated differently. The Postal Service is "an independent establishment of the executive branch" of the federal gov-

**1328**

ernment, 39 U.S.C. § 201, whereas, for example, the Corporation for Public Broadcasting is "not an agency or establishment" of the federal government, 47 U.S.C. § 396(b), and neither is the National Railroad Passenger Corporation (Amtrak), 45 U.S.C. § 541 (declaring Amtrak "not an agency or establishment of the United States Government"), *repealed by* Pub.L. 103–272, § 7(b), 108 Stat. 1379 (1994).

Plaintiffs offer *Roy v. Runyon,* 954 F.Supp. 368 (D.Me.1997) as authority for the proposition that the Postal Service is not a government agency, and is therefore not immune to liability for punitive damages under Section 1981a(b)(1). The U.S. Magistrate Judge in *Roy* was convinced that because the provision of the 1972 Equal Employment Opportunity Act abrogating governmental immunity under Title VII listed the Postal Service separately from "executive agencies," 42 U.S.C. § 2000e–16, Congress must not have intended to exempt the Postal Service from punitive damages in enacting the 1991 Civil Rights Act, which mentions only executive agencies, the government itself, and political subdivisions. *Roy,* 954 F.Supp. at 382 & n. 16. The *Roy* court adopted thus the view expressed in *Baker v. Runyon,* 922 F.Supp. 1296 (N.D.Ill.1996).

In *Baker,* the District Court for the Northern District of Illinois found in the Postal Reorganization Act, 39 U.S.C. § 401(1), a "full waiver" of the Postal Service's sovereign immunity, thus rendering the Postal Service amenable to suits for punitive damages to the same extent such damages would be recoverable from a private commercial enterprise. *Baker,* 922 F.Supp. at 1298. Like the District of Maine, the *Baker* court was persuaded that Congress' singling out of the Postal Service **in addition to** "executive agencies" in 42 U.S.C. § 2000e–16 indicated that "Congress considered the Postal Service something other than an agency." *Baker,* 922 F.Supp. at 1299.

The Court of Appeals for the Seventh Circuit, however, was of a different mind, and reversed the Northern District of Illinois on this very issue. *Baker v. Runyon,* 114 F.3d 668 (7th Cir.1997) (Flaum, J.), *rev'g* 922 F.Supp. 1296 (N.D.Ill.1996). The Seventh Circuit employed a two-part analysis of the question whether the Postal Service could be

subjected to an award of punitive damages for violations of Title VII: First, it must be ascertained whether there has been a waiver of sovereign immunity, and second, if there has been such a waiver, it must be determined whether the remedy sought is provided by the substantive law sued on. *Baker,* 114 F.3d at 671 (quoting *FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). The Seventh Circuit agreed with the district court that there had been a waiver, but parted company on the interpretation of Section 1981a(b)(1) itself. The *Baker* panel read Section 1981a(b)(1) to "provide[ ] that punitive damages are not available against government *entities*" (emphasis supplied). *Baker, id.* The Seventh Circuit panel found "nothing in Title VII itself to suggest that exempting the Postal Service from punitive damages would be 'demonstrably at odds' with the purposes of that statute or 'lead to absurd result.'" *Ibid.* (quoting *Time Warner Cable v. Doyle,* 66 F.3d 867, 876 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996)).

It seems to this court, though, that the Seventh Circuit's analysis may suffer from at least two infirmities. First, the *Baker* panel's statement that "it was Congress' intention to exempt all federal agencies from [punitive damages] awards," 114 F.3d at 671 begs the question. Federal agencies **are** exempt from punitive damages awards. *Quod erat demonstrandum.* The issue is whether the Postal Service **is** a "federal agency" within the meaning of Section 1981a(b)(1).

Second, the *Baker* panel's assertion that Section 1981a(b)(1) "provides that punitive damages are not available against government entities" is a direct misstatement of the precise language of the statute. The plain language of the statute is the most reliable indicator of Congressional intent, and the court must presume that Congress meant what it said and said what it meant when drafting a piece of legislation. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). The plain language of the statute exempts "agencies," not "entities." This is not a distinction without a difference: While, for example, the Corporation for Public

Broadcasting is certainly a governmental "entity," it is explicitly **not** an "agency." 47 U.S.C. § 396(b). This court cannot ignore these subtle linguistic distinctions, but must, rather, give them the effect intended by their drafters.

And what was that intent? The court is forced to agree with the result, if not all the reasoning behind it, reached by the Seventh Circuit in *Baker*. Despite the subtle incongruity in Congress' having singled out the Postal Service in the section of Title VII waiving its sovereign immunity from suit, in contradistinction to other governmental entities, and having made no such specific provision respecting the Postal Service in the 1991 amendments making damages available for violations of Title VII, the legislative history of the 1991 damages amendment itself makes fairly clear Congress' understanding of the exemption for "agencies."

On October 30, 1991, three weeks prior to the statute's enactment, in debate before the full Senate on the precise provision at issue in the present matter, Senator Kennedy voiced his approval of the amendment making damages available to employees of the United States for Title VII violations. Senator Kennedy first read aloud the sentence which is now codified at 42 U.S.C. § 1981a(b)(1), and expressed his understanding that it was the Senate's

> intent that the limitation on punitive damages would apply to Federal, State and local governments. It would not have made any sense to interpret this provision otherwise. This provision certainly suggests that Federal employees are entitled to compensatory damages.

> But the value of this particular amendment is that is makes this intent specific. I think it is extremely useful for it to be unambiguous that Federal employees are entitled to receive compensatory damages. That is what this amendment does.

137 Cong. Rec. § 15445–02, *S15460 (daily ed. Oct. 30, 1991) (statement of Sen. Kennedy).

In addition to Senator Kennedy's statement on the Senate floor regarding the pre-enactment understanding of the scope of the provision immunizing governmental entities from liability for punitive damages, there also exists legislative historical evidence of the pre-enactment understanding of the House of Representatives of the meaning of 42 U.S.C. § 1981a(b)(1). On November 7, 1991, Representative Don Edwards, chairman of the House Judiciary Subcommittee on Civil and Constitutional Rights, which had drafted the amendments to Title VII, read into the record during a session of the full House, prior to that body's voting to enact the amendments, *his* understanding of the governmental immunity clause:

> [T]he statutory language of [Section 1981a] is explicit that compensatory damages are available against state and local governmental defendants although [subparagraph] (b)(1) clarifies that punitive damages are not. In so doing it reinforces the clear statutory intent that compensatory damages are available against federal, state and local governmental defendants to the same extent that they are available against private sector defendants; punitive damages are not.

137 Cong. Rec. H9505–1, *H9527 (daily ed. Nov. 7, 1991) (interpretive memorandum of Rep. Edwards).

From these statements, one from each house of Congress, made on the floors of the respective houses, before enactment, by key sponsors of the legislation, it appears unequivocally that the exemption of the U.S. Postal Service from subparagraph (b)(1)'s grant of immunity from punitive damages was quite possibly the very last thing Congress could have anticipated, let alone intended.

▬ Statements by individual legislators do not, of course, control statutory construction, but when consistent with statutory language they do provide evidence of legislative intent. *Brock v. Pierce County*, 476 U.S. 253, 263, 106 S.Ct. 1834, 1840–41, 90 L.Ed.2d 248 (1986). Explanations by sponsors of a piece of legislation deserve substantial weight in divining the meaning Congress intended for a federal statute. *Federal Energy Adm'n v. Algonquin SNG, Inc.*, 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976); *NLRB v. St. Francis Hosp.*, 601 F.2d 404, 415 (9th Cir.1979). Clear-cut and forceful expressions of legislative purpose like

those of Senator Kennedy and Chairman Edwards must not be frustrated by such nice judicial construction as is urged upon the court by Plaintiff. *First Nat'l Bank v. Walker Bank and Trust Co.,* 385 U.S. 252, 260–61, 87 S.Ct. 492, 496–97, 17 L.Ed.2d 343 (1966). Had Congress truly resolved to treat the Postal Service differently from other organs of the national government in this matter of punitive damages for violations of federal anti-employment discrimination laws, it seems likely, considering the statute itself, the statutory scheme as a whole, and the expressed understandings of the statute's ·creators, that it would have said so. But it said no such thing.

Other courts have continued to regard the Postal Service as a government agency for the purposes of determining the scope of the Service's liability under Title VII. *Newbold v. United States Postal Serv.,* 614 F.2d 46, 46 (5th Cir.1980); *Cooper v. United States Postal Serv.,* 740 F.2d 714, 716 (9th Cir.1984), *cert. denied,* 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985); *Ausfeldt v. Runyon,* 950 F.Supp. 478, 487–88 (N.D.N.Y.1997); *Tuers v. Runyon,* 950 F.Supp. 284, 285–86 (E.D.Cal.1996); *Miller v. Runyon,* 932 F.Supp. 276, 277 (M.D.Ala.1996). This court agrees. The U.S. Postal Service is a "government agency" within the meaning of the 1991 Civil Rights Act, 42 U.S.C. § 1981a(b)(1); the Service is therefore immune from liability for punitive damages.

For the foregoing reasons, ***IT IS THEREFORE ORDERED*** that Defendant the U.S. Postmaster General's Motion to Strike (Doc. # 13) Plaintiff's claim for punitive damages is ***HEREBY GRANTED.***