Champagne v. USPS                    CV-96-623-SD   6/22/98

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


Viki Champagne

        v.                          Civil No. 96-623-SD

United States Postal Service


**O R D E R**


In this action, plaintiff Viki Champagne, alleges that her employer the United States Postal Service, violated Title VII, 42 U.S.C. §§ 2000e et seq. (1994), by refusing to promote her to a supervisory position and by failing to enforce an agreement that settled plaintiff's earlier sexual harassment complaint. Currently before the court is the Postal Service's Motion to Dismiss and for Summary Judgment, to which Champagne objects.


Background

Since 1983, Champagne has worked as a clerk in the Rochester Post Office. In 1992, Champagne filed an informal complaint with Equal Employment Opportunity (EEO) counselor Pauline Gosselin alleging that Dan Kerdus, one of her co-workers and a part-time acting supervisor, had been sexually harassing her. Champagne subsequently withdrew her complaint after reaching an agreement with the Rochester postmaster. The agreement stated that Champagne and Kerdus were not to be alone together in the post office. Although this agreement was in writing, it has subsequently disappeared.

In 1993, Champagne filed a second EEO complaint alleging that her co-workers were harassing her in retaliation for filing the original complaint and that she was being denied overtime. As a result of this complaint the parties entered into a formal EEO settlement agreement in March of 1994. The agreement provided: (1) if Champagne and Kerdus were alone in the building, Kerdus was to leave; (2) management would adhere to the policies governing assignment of overtime; (3) Kerdus would not have any supervisory authority over Champagne and would use an intermediary if he was in a supervisory position and needed to communicate with Champagne; and (4) management and Kerdus would maintain the confidentiality of any current or past EEO issues. During the negotiation of this agreement, Champagne made clear that she intended to apply for a position as an acting supervisor, known as a 204-B.

In March of 1995, Champagne applied to be a 204-B. Employees who receive 204-B status are trained as supervisors and are eligible to fill in when no regular supervisor is available. Service as a 204-B is compensated at a higher rate and is the standard route to a permanent supervisory position. Champagne's application was considered by Richard Tilton, who was serving as the officer in charge of the Rochester Post Office. According to Tilton, Champagne was an exceptional employee who was fully qualified to be a 204-B. Tilton, however, was reluctant to approve her promotion because of the settlement agreement. At a meeting with union officials Tilton stated that Champagne had

2

applied to be a 204-B, but he would have to check on her request "because of Dan."  Tilton asked the EEO counselor, Pauline Gosselin for advice.  Gosselin responded by memorandum suggesting that Champagne be offered a 204-B position in an associate office, be allowed to serve as a 204-B in the Rochester office only when Kerdus was absent, or be allowed to serve as a 204-B in Rochester on condition that she sign a waiver stating that she no longer fears Kerdus and that she no longer holds management to the terms of the stipulation in the settlement agreement, which prohibited Kerdus from having supervisory authority over Champagne.  Champagne was presented with these conditions, but found them unacceptable.  Because she would not agree to the waiver, the Postal Service denied Champagne's request to become a 204-B.

Champagne contacted an EEO counselor on May 31, 1995, and filed a formal EEO complaint on August 31, 1995, which forms the basis for this suit.  In this complaint, she alleged that the Postal Service denied her a promotion in retaliation for filing her original EEO complaint, that the Postal Service discriminated against her based on sex, that Tilton's statement to the union representatives in connection with Champagne's 204-B application violated the settlement agreement's confidentiality provision, and that the Postal Services failed to protect her from retaliatory harassment by co-workers.

Subsequently the plaintiff has filed two additional EEO complaints.  In December 1995, Champagne contacted an EEO

counselor alleging that the Postal Service retaliated against for her earlier EEO activity by (1) issuing a letter of warning on November 1, 1995; (2) requiring Champagne to furnish medical documentation to support her request for sick leave; and (3) denying her an assignment as a bulk mail trainee. On January 24, 1997, Champagne appealed the Postal Service's finding of no discrimination to the Equal Employment Opportunity Commission (EEOC). Her fifth contact with the EEO came in February of 1996 when Champagne complained that she was discriminated against based both on her prior EEO activity and on her sex when Marie Fabrizio disclosed details of her March 1994 settlement, and another employee was not disciplined for throwing a parcel at her. On August 6, 1997, Champagne requested a hearing before an administrative judge on these claims.

## Discussion

### 1. Standard of Review

#### a. Dismissal

When a court is presented with a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), "its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A motion to dismiss pursuant to Rule 12(b)(6) requires the court to review the complaint's allegations in the light most favorable to plaintiff, accepting all material

4

allegations as true, with dismissal granted only if no set of facts entitles plaintiff to relief. See, e.g., Scheuer, supra, 416 U.S. at 236; Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). When defendants assert in a motion to dismiss that an action is barred by an affirmative defense such as the statute of limitations and the face of the complaint reveals that the action is so barred, the complaint must be dismissed. See Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989); DiMella v. Gray Lines of Boston, Inc., 836 F.2d 718, 719-20 (1st Cir. 1988).

b. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). The court's function at this stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) ( quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The moving party has the burden of establishing the lack of a genuine issue of material fact. See Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986). The court views the record in the light most favorable to the nonmoving party,

5

granting her all reasonable inferences in her favor. Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991). To survive summary judgment, the nonmovant must make a "showing sufficient to establish the existence of [the] element[s] essential to [her] case," Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), and cannot merely rely on allegations or denials within the pleadings. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, 511 U.S. 1018 (1994).

2. Defendant's Motion to Dismiss for Failure to Exhaust
   Administrative Remedies

The Postal Service's first set of arguments attacks the timeliness of Champagne's third and fourth counts. According to the Postal Service, both of these counts are based in part on conduct that was not part of Champagne's EEO complaint. Some of the conduct occurred more than forty-five days before Champagne initiated the EEO process, and thus is time barred. The Postal Service also contends that some of the conduct complained of is the subject of Champagne's later complaints, and thus claims based on this conduct are premature. Champagne counters that the counts are based on conduct occurring within the forty-five days before she filed her EEO complaint. Further, Champagne argues the older conduct is actionable as a continuing violation.

"Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal court." Jensen v.

6

Frank, 912 F.2d 517, 520 (1st Cir. 1990). The administrative procedure requires a plaintiff to "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1) (1997). Furthermore, because the purpose of the administrative complaint is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation[,]" "'[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.'" Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (quoting Powers v. Grinell Corp., 915 F.2d 34, 38 (1st Cir. 1990)).

The Postal Service argues that Champagne's claim based upon the Postal Service's alleged failure to protect her from her co-workers' hostile acts was not administratively exhausted. The court agrees. When asked to identify the acts that formed the basis for the instant action, Champagne did not identify any hostile acts occurring within forty-five days of her initiation of the EEO process. See Answer to Interrogatory Number 1 attached to Defendant's Motion for Dismissal and Summary Judgment. Furthermore, the scope of this case is limited by the charge filed with the EEOC, which only referenced the Postal Service's failure to promote Champagne, and Tilton's alleged disclosure of the settlement agreement. See Lattimore, supra, 99

7

F.3d at 464.

The Postal Service's timeliness arguments are also addressed to Champagne's Count III, which references a 1994 disclosure of the settlement agreement by Kerdus. Champagne's EEO complaint also alleged that she was retaliated against for her earlier EEO activity by Tilton's disclosure of her conflict with Kerdus in the course of a meeting with union representatives in March of 1995.[1] Although Kerdus's disclosure was referenced in an affidavit submitted in support of Champagne's EEO complaint, it clearly occurred more than forty-five days before Champagne contacted the EEO Counselor. Thus, any independent complaint based on Kerdus's alleged disclosure is untimely. Champagne, however, alleges that Kerdus's action was part of a continuing violation.

Continuing violations may be either systemic or serial. See Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir. 1993). A systemic violation occurs when an employer follows a discriminatory policy or practice. See Jensen, supra, 912 F.2d at 523. "'A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint.'" Sabree v. United Bhd. Of Carpenters and Joiners, 921 F.2d 396, 400 n.7 (citing Jensen, supra, 912 F.2d at 523). "This type of claim requires no identifiable act

_____

[1] The Postal Service apparently does not contest the timeliness of this count to the extent it is based upon the Tilton disclosure.

of discrimination in the limitations period, and refers to general practices or policies, such as hiring, promotion, training and compensation." Provencher v. CVS Pharmacy, 1998 WL 254432, *7 (1st Cir. 1998) (internal citations omitted). Here the plaintiff has alleged a series of discrete acts, not a policy. Thus, Champagne's only colorable continuing violation claim falls under the serial violation rubric.

A serial violation is defined as "'a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII.'" Kassaye, supra, 999 F.2d at 606 (quoting Sabree, supra, 921 F.2d at 400). Once a Title VII plaintiff has shown that discriminatory conduct has occurred within the actionable period, she may also recover for those "portions of the persistent process of illegal discrimination that antedated the limitations period." Sabree, supra, 921 F.2d at 401 (quotation omitted). However, as the theory would not extend to the "mere effects or consequences of past discrimination," the plaintiff must first show that an independent violation of Title VII occurred within the limitations period. Kassaye, supra, 999 F.2d at 606. Because the court finds that Tilton's statement does not as a matter of law constitute an independent violation of Title VII, it cannot support plaintiff's continuing violation theory. See infra at § 3.a.

The Postal Service also contends that to the extent her claims are based upon Marie Fabrizio's alleged disclosure of the

9

settlement agreement and the warning letter Champagne received in 1995, they are premature. These factual allegation do not appear in Champagne's complaint; however, when asked to identify the conduct underlying her claims, Champagne referred to these incidents. The applicable provisions require plaintiffs to bring a suit "within 90 days of receipt of notice of final action . . . or after one hundred and eighty days from the filing . . . with the Equal Employment Opportunity Commission on appeal. . . ." 42 U.S.C. § 2000e-16(c). In this case, Champagne filed her complaint in federal court less than 180 days after filing an appeal in her fourth administrative case, and before receiving a final decision in her fifth administrative action. Thus, a claim based upon these allegations was premature when this case was filed. Because these allegations were not part of Champagne's complaint and she has not shown that she properly exhausted her administrative remedies, these claims were never properly before the court. If Champagne wishes to include these claims in the instant action, it is incumbent upon her to plead them and allege exhaustion of her administrative remedies.

3. Defendant's Motion for Summary Judgment

    a. Count III

    "Where, as in this case and in retaliation cases generally, there is no direct evidence of the defendant's retaliatory animus, the McDonnell Douglas burden-shifting framework is used to allocate and order the burdens of producing evidence."

10

<u>Fennell v. First Step Designs, Ltd.</u>, 83 F.3d 526, 535 (1st Cir. 1996). Thus, Champagne initially bears the burden to show: "(1) she engaged in protected conduct under Title VII . . .; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action." <u>Id.</u> The Postal Service alleges that she has failed to make out a <u>prima facie</u> case because she has not suffered an adverse employment action. Champagne's only allegation in support of this count is that Tilton told union leaders he would "have to check" whether Champagne could be considered for a 204-B position "because of Dan." The court fails to comprehend how this statement can be construed as an adverse employment action. Although failure to abide by the terms of the settlement agreement could constitute an adverse action, Tilton's statement did not in fact violate the agreement. This statement did not disclose the substance or existence of Champagne's EEO complaints. Indeed, the statement does not even reveal the nature of the conflict between Champagne and Kerdus. Thus, the court agrees that Champagne's Count III does not state a <u>prima facie</u> case of retaliation.

### b. Count I

The Postal Service requests summary judgment on Champagne's claim of sex discrimination. Applying the <u>McDonnell Douglas</u> burden shifting model, the Postal Service argues Champagne has failed to make out a <u>prima facie</u> case. <u>See</u> <u>McDonnell Douglas</u>

11

<u>Corp. v. Green</u>, 411 U.S. 792 (1973). Champagne, however, appears to be basing her claim not on a disparate treatment theory governed by <u>McDonnell Douglas</u>, but on a theory of disparate impact. Thus, Champagne argues, "There is at least a fact issue as to whether this policy has a disproportionately negative impact on women." Objection to Defendant's Motion for Dismissal and Summary Judgment at 12.

What is required of the plaintiff to establish a <u>prima facie</u> case under Title VII varies depending upon the type of case. The courts have delineated two general forms of discrimination—disparate treatment and disparate impact. <u>See</u> <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 581-82 (1978) (Marshall, J. concurring in part); <u>EEOC v. Steamship Clerks Union, Local 1066</u>, 48 F.3d 594, 601 (1st Cir.) (discussing disparate impact approach), <u>cert.</u> <u>denied</u>, 516 U.S. 814 (1995). The vast majority of cases are disparate treatment cases relying on indirect proof of discriminatory animus, and are governed by the now familiar burden-shifting scheme announced in <u>McDonnell Douglas v. Green</u>. In the rare case where the plaintiff produces direct evidence of discrimination, however, "the <u>McDonnell Douglas</u> framework is inapposite. In those cases, direct evidence of discriminatory motive . . . serves to shift the burden of persuasion from employee to employer." <u>Smith v. F.W. Morse & Co.</u>, 76 F.3d 413, 421 (1st Cir. 1996). Disparate impact cases, unlike disparate treatment cases, involve "practices that are fair in form, but discriminatory in operation." <u>Griggs v. Duke</u>

12

<u>Power Co.</u>, 401 U.S. 424, 431 (1971). To establish a <u>prima</u> <u>facie</u> case of disparate impact the plaintiff must demonstrate that the employer "uses a particular employment practice that causes a disparate impact on the basis of . . . sex. . . ." 42 U.S.C. § 2000e-2 (k)(1)(A)(i). "A showing of intentional discrimination is not required." <u>Legault v. aRuso</u>, 842 F. Supp. 1479, 1486 (D.N.H. 1994).

Although limiting an employee's opportunities for advancement because she is a victim of sexual harassment may seem unfair, the plaintiff must articulate how this action violates Title VII. Champagne has apparently chosen to cast this as a disparate impact claim.[2] The court, however, finds that as a disparate impact claim Champagne's case falters on at least two fronts. First, disparate impact claims by their nature involve policies that have a disproportionate impact on a protected class. Thus, as a preliminary matter the plaintiff in a disparate impact case must identify a generally applicable policy or practice. In this case, the court has been presented with no

---

[2] Although the Postal Service interprets Champagne's argument based upon <u>United Automobile Workers v. Johnson Controls</u>, 499 U.S. 187 (1991), that the Postal Service's policy is facially discriminatory as applying to her claim of sex discrimination, the court finds that the plaintiff has limited this argument to her claim of retaliation. Champagne raises this argument in Section III(E) of her memorandum, which is intended to respond to defendant's request for summary judgment on Count II (Champagne's retaliation claim). In this Section, Champagne states that "the Postal Service's position in effect concedes the existence of retaliatory discrimination." <u>See</u> Objection to Defendant's Motion for Dismissal and Summary Judgment at 12. Thus, the court will address this argument in the following section.

evidence to indicate that the Postal Service has or intends to treat other employees similarly.  Second, even if a generally applicable policy does exist, Champagne has produced no evidence that this policy has a significantly discriminatory impact.  Disparate impact claims, as a practical matter, require statistical evidence to establish the existence of significant impact.  Such evidence is notably absent in this case.

### c. Count II

Champagne's Count II alleges that the Postal Service's denial of her request to become a 204-B amounted to retaliation for her earlier EEO activity.[3]  The Postal Service argues that Champagne has failed to state a prima facie case.  And, even if she has, the defendant has proffered legitimate nondiscriminatory reasons for refusing request.  The plaintiff counters that the Postal Service's action was facially discriminatory, and that the court, therefore, need not inquire further into the defendant's intent.  Thus, if Champagne's construction of the case is correct, the Postal Service's proffers of legitimate nondiscriminatory reasons are irrelevant.

In discrimination cases generally, "the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence

---

[3]The Federal Government is liable for retaliation under Title VII even though the language extending coverage under the act to federal employees does not specifically mention retaliation.  See Afanador v. United States Postal Service, 787 F. Supp. 261, 267 n.11 (D. Puerto Rico), aff'd 976 F.2d 724 (1st Cir. 1991).

of discrimination."  Trans World Airlines v. Thurston, 469 U.S. 111, 121 (1985).  In such cases, no further proof of intent is required.  See Johnson Controls, supra, 499 U.S. at 199.  This is because Title VII prohibits all discrimination on the basis of protected characteristic, not just discrimination motivated by malice.  Thus, once the plaintiff has shown differential treatment it is irrelevant why the employer discriminated.  The burden then shifts to the defendant to justify its action under an applicable affirmative defense.  See Jackson v. Harvard Univ., 900 F.2d 464, 467 (1st Cir.), cert. denied, 498 U.S. 848 (1990).

Courts have applied this scheme to retaliation claims as well as claims of discrimination based on race or sex.  See EEOC v. Board of Governors of States Colleges, 957 F.2d 424, 427 (7th Cir.), cert. denied, 506 U.S. 906 (1992).  The United States Court of Appeals for the Seventh Circuit, for instance, has rejected the argument that retaliation claims require proof of a greater level of animus than that required in discrimination claims.  Id.  This conclusion follows from the fact that the relevant language prohibits employers from "discriminat[ing] against any of his employees . . . because he . . . has made a charge. . . [under Tile VII]."  42 U.S.C. § 2000e-3(a).  Thus, although courts refer to claims based on this section as retaliation claims, the statute does not limit its prohibition against discrimination to cases where the discrimination is motivated by revenge.  Based on this language the Seventh Circuit held that "[w]hen an employee's participation in statutorily

15

protected activity is the determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent." Board of Governors of State College, supra, 957 F.2d at 428. Thus, direct evidence that the employer based an adverse action on protected conduct would shift the burden of persuasion to the employer regardless of the employer's intent. This circuit has held that the defendant can meet this burden by proving by preponderance of the evidence that it would have taken the same action if it had not considered the employee's protected activity.[4] See Tanca v. Nordberg, 98 F.3d 680 (1st Cir. 1996), cert. denied, 117 S. Ct. 1253 (1997).

To determine whether the Postal Service is entitled to summary judgment in this case, the court need not decide whether the Postal Service's decision is, as the plaintiff characterizes it, a facially discriminatory action, which the defendant is attempting to defend by pointing to a benign motive, or as the defendant sees it, a decision not based on protected conduct at all. The court finds that such a determination is unnecessary because, applying the McDonnell Douglas framework, the plaintiff has produced enough evidence to preclude summary judgment.

The plaintiff has clearly established a prima facie case of

---

[4] This is the affirmative defense established by the United States Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). In Tanca, the First Circuit held that although Congress had partially overruled Price Waterhouse in the 1991 Civil Rights Act, Congress's limitation only applied to discrimination claims and not claims of retaliation. See Tanca, supra, 98 F.3d at 680.

16

retaliation <u>i.e.</u>, she engaged in protected conduct under Title VII of which her employer was aware; she suffered an adverse employment action; and there was a causal connection between the protected conduct and the adverse action. See <u>Fennell</u>, <u>supra</u>, 83 F.3d at 535. The court cannot credit the Postal Service's argument that there is no causal connection in this case. Clearly, the Postal Service would not have restricted Champagne's opportunity to serve as a 204-B if it were not for her previous EEO activity. Although the Postal Service relies on <u>Blackie v. Maine</u>, 75 F.3d 716 (1st Cir. 1996), for the proposition that "but for" causation is insufficient to establish a <u>prima facie</u> case, the court finds that causal connection in this case is considerably stronger than that presented in <u>Blackie</u>. In <u>Blackie</u> the employer's adverse action was taken in an effort to comply with a court order. The <u>Blackie</u> court emphasized that the action in question was a reaction to the outcome of an earlier lawsuit. See <u>id.</u> at 723. Thus, the adverse action affected all probation officers, regardless of whether they participated in the protected activity--the relevant fact was not the protected activity itself, but the outcome of the suit. In this case, the Postal Service's action was not taken to comply with the settlement agreement. There is nothing in the settlement agreement that restricts Champagne's authority to supervise Kerdus. Unlike the employer's action in <u>Blackie</u>, the Postal Service's action was specifically directed at Champagne, an employee who has repeatedly evoked Title VII's protection. Given

17

that under the McDonnell Douglas framework, "[t]he prima facie burden is 'quite easy to meet,'" the court is satisfied that Champagne has met her burden. Hodgens, v. General Dynamics Corp., 1998 WL 248013, *12 (1st Cir. 1998) (quoting Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir.1991)).

The Postal Service can overcome Champagne's prima facie case by establishing that her opportunities were restricted for legitimate non-discriminatory reasons. In this case, the Postal Service claims that it restricted Champagne's access to super-visory positions to protect itself from liability.[5] Assuming fear of liability is a legitimate reason for an adverse employment decision, but cf. Johnson Controls, supra, 499 U.S. at 210 (fear of liability does not support BFOQ), the court finds that Champagne has presented enough evidence to support a finding of pretext masking discrimination. Most notably, the Postal Service's professed fear of liability contrasts markedly with its willingness to allow Kerdus to serve as a 204-B until 1994 when he voluntarily stepped down, despite Champagne's harassment complaints in the spring of 1992 and the fall of 1993. See Kerdus Dep. at 15, appendix to Plaintiff's Memorandum in Support of Objection to Defendant's Motion for Dismissal and Summary Judgment. Allowing an alleged harasser authority to supervise his victim clearly creates a greater risk of future incidents

---

[5] The Postal Service also alleges its response was designed to protect Champagne because she is afraid of Kerdus. The court, however, finds little merit to this justification. Champagne clearly wants to serve as a supervisor and has expressed no fear of doing so.

18

than the converse.  Furthermore, a reasonable juror could infer that the Postal Service's alleged failure to discipline Kerdus, to protect Champagne from hostile acts from other employees, and to enforce the settlement agreement stem from hostility towards Champagne engendered by protected activities.  Thus, the court finds that Champagne has presented enough evidence to create a triable issue of fact.

### d. Punitive Damages

Under Title VII a plaintiff may recover punitive damages "against a respondent (other than a government, government agency or political subdivision) . . . ."  42 U.S.C. § 1981a (b)(1). Thus, Champagne's request for punitive damages is necessarily premised on the conclusion that the Postal Service is not a government agency within the meaning of this provision.  To support this position, Champagne relies on the United States District Court for the District of Maine's decision in Roy v. Runyon, 954 F. Supp. 368, 381 (D.Me. 1997).

This court is persuaded by the overwhelming majority of courts that have held that the Postal Service is exempt from punitive damages.  See Baker v. Runyon, 114 F.3d 668 (7th Cir.1997) (Post Office is exempt as "government agency"); Prudencio v. Runyon, 1998 WL 214555 (W.D. Va. 1998) (same); Jense v. Runyon, 990 F. Supp. 1320 (D. Utah 1998) (same); Cleveland v. Runyon, 972 F. Supp. 1326 (D. Nev. 1997) (same); Ausfeldt v. Runyon, 950 F. Supp. 478 (N.D.N.Y. 1997) (same); Griffin v.

Runyon, 1997 WL 359972 (N.D. Ill. 1997) (same); Tuers v. Runyon, 950 F. Supp. 284 (E.D. Cal. 1996) (same); Miller v. Runyon, 932 F. Supp. 276 (M.D. Ala. 1996) (same). Baker v. Runyon aptly states the reasoning for this logical holding, and the court is in full agreement with the Baker court. See Baker, supra, 114 F.3d 668 passim.

## Conclusion

For the abovementioned reasons the Defendant's Motion to Dismiss and for Summary Judgment is granted in part and denied in part. Count IV is hereby dismissed. Judgment shall be entered for the defendant on Counts I and III.

SO ORDERED.

_____
Shane Devine
Senior Judge

June 22, 1998

cc:  H. Jonathan Meyer, Esquire
     Emmanuel Krasner, Esquire
     Gretchen Leah Witt, Esquire